**KING, MOENCH & COLLINS LLP**
Matthew C. Moench, Esq. (031462007)
51 Gibraltar Drive, Suite 2F
Morris Plains, New Jersey 07950
T: (973) 998-6860
F: (973) 998-6863
mmoench@kingmoench.com
*Attorney for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JAMES P. DODD, in his individual capacity as a voter and taxpayer, and in his official capacity as the DOVER DEMOCRATIC COUNTY COMMITTEE MEMBER FOR WARD 1, DISTRICT 3; MARIA S. SOLINES, in her individual capacity as a voter and taxpayer, and in her official capacity as the DOVER DEMOCRATIC COUNTY COMMITTEE MEMBER FOR WARD 3, DISTRICT 3; MICHELLE ESPADA, in her individual capacity as a voter and taxpayer, and in her official capacity as the DOVER DEMOCRATIC COUNTY COMMITTEE MEMBER FOR WARD 1, DISTRICT 1; MARIA F. BORDA, in her individual capacity as a voter and taxpayer, and in her official capacity as the DOVER DEMOCRATIC COUNTY COMMITTEE MEMBER FOR WARD 3, DISTRICT 2; GUADALUPE BARRIOS, in her individual capacity as a voter and taxpayer, and in her official capacity as the DOVER DEMOCRATIC COUNTY COMMITTEE MEMBER FOR WARD 4, DISTRICT 1; FERNANDO BARRIOS, in his individual capacity as a voter and taxpayer, and in his official capacity as the DOVER DEMOCRATIC COUNTY COMMITTEE MEMBER FOR WARD 4, DISTRICT 2; WASHINGTON J. PRO, in his individual capacity as a voter and taxpayer, and in his official capacity as the DOVER DEMOCRATIC COUNTY COMMITTEE MEMBER FOR WARD 4, DISTRICT 3; | VIA ELECTRONIC CASE FILING<br><br>DOCKET NO.:  2:26-cv-05057-EP-JSA<br><br><u>Civil Action</u><br><br>**FIRST AMENDED COMPLAINT** |

1

THOMAS J. INCERA, in his individual capacity as a voter and taxpayer, and in his official capacity as the DOVER DEMOCRATIC COUNTY COMMITTEE MEMBER FOR WARD 2, DISTRICT 1; THOMAS H. MCDONALD, in his individual capacity as a voter and taxpayer, and in his official capacity as the DOVER DEMOCRATIC COUNTY COMMITTEE MEMBER FOR WARD 2, DISTRICT 1; THOMAS M. HUBERT, in his individual capacity as a voter and taxpayer, and in his official capacity as the DOVER DEMOCRATIC COUNTY COMMITTEE MEMBER FOR WARD 3, DISTRICT 1; MAUREEN E. MCGRATH, in her individual capacity as a voter and taxpayer, and in her official capacity as the DOVER DEMOCRATIC COUNTY COMMITTEE MEMBER FOR WARD 3, DISTRICT 1; MICHAEL J. SCARNEO, in his individual capacity as a voter and taxpayer, and in his official capacity as the DOVER DEMOCRATIC COUNTY COMMITTEE MEMBER FOR WARD 3, DISTRICT 2; ARTURO B. SANTANA, in his individual capacity as a voter and taxpayer, and in his official capacity as the DOVER DEMOCRATIC COUNTY COMMITTEE MEMBER FOR WARD 4, DISTRICT 2; and ORLANDO SUAREZ, in his individual capacity as a voter and taxpayer,

Plaintiffs,

vs.

MORRIS COUNTY DEMOCRATIC COMMITTEE; DARCY J. DRAEGER, in her individual and official capacity as the MORRIS COUNTY DEMOCRATIC COMMITTEE CHAIR; MICHAEL DELAMATER, in his individual and official capacity as the MORRIS COUNTY DEMOCRATIC COMMITTEE VICE CHAIR; MARGARET C. CAPODANNO, in

2

her individual and official capacity as the MORRIS COUNTY DEMOCRATIC COMMITTEE SECRETARY; STEVEN G. PYLYPCHUK, in his individual and official capacity as the MORRIS COUNTY DEMOCRATIC COMMITTEE TREASURER; MATTHEW B. CLARKIN, in his individual and official capacity as the MORRIS COUNTY DEMOCRATIC COMMITTEE OPERATIONS CHAIR; MEGHAN C. LYNCH, in her individual and official capacity as the MORRIS COUNTY DEMOCRATIC COMMITTEE FINANCE CO-CHAIR; BENJAMIN L.WEISMAN, in his individual and official capacity as the MORRIS COUNTY DEMOCRATIC COMMITTEE FINANCE CO-CHAIR; JASON D. NAVARINO, in his individual and official capacity as the MORRIS COUNTY DEMOCRATIC COMMITTEE PARLIAMENTARIAN; AMALIA DUARTE, in her individual and official capacity as the MORRIS COUNTY DEMOCRATIC COMMITTEE GRASSROOTS CHAIR; CARA A. PARMIGIANI, in her individual and official capacity as the MORRIS COUNTY DEMOCRATIC COMMITTEE INNOVATION CHAIR; ANN F. GROSSI, ESQ., in her official capacity as MORRIS COUNTY CLERK; and JOHN DOES I-X (fictitious names), jointly, severally, and in the alternative,

Defendants.

Plaintiffs, by way of First Amended Complaint, hereby state as follows:

## **PARTIES**

1.      Plaintiff James P. Dodd, is the Mayor of the Town of Dover, Morris County, New Jersey, residing at 261 West Clinton Street, Apt. A, Dover, New Jersey 07801.  Mayor Dodd was

3

also one of two Dover Democratic County Committee ("DDCC") members representing Dover Ward 1, District 3.

2.     Plaintiff Maria S. Solines was the duly elected Municipal Chair of the DDCC. Chair Solines resides at 196 S Morris Street, Dover, New Jersey 07801 and was elected as Chair in 2023.

3.     Plaintiff Michelle Espada was one of two DDCC members representing Dover Ward 1, District 1, residing at 32 Princeton Avenue, Dover, New Jersey 07801.

4.     Plaintiff Maria F. Borda was one of two DDCC members representing Dover Ward 3, District 2, residing at 175 S Morris Street, Dover, New Jersey 07801.

5.     Plaintiff Guadalupe Barrios was one of two DDCC members representing Dover Ward 4, District 1, residing at 52 N Bergen Street, Dover, New Jersey 07801.

6.     Plaintiff Fernando Barrios was one of two DDCC members representing Dover Ward 4, District 2, residing at 12 Christopher Street, Dover, New Jersey 07801.

7.     Plaintiff Washington J. Pro was one of two DDCC members representing Dover Ward 4, District 3, residing at 196 S Morris Street, Dover, New Jersey 07801.

8.     Plaintiff Thomas J. Incera is one of two DDCC members representing Dover Ward 2, District 1, residing at 173 Park Heights Avenue, Dover, New Jersey 07801.

9.     Plaintiff Thomas H. McDonald is one of two DDCC members representing Dover Ward 2, District 1, residing at 91 Randolph Avenue, Dover, New Jersey 07801.

10.     Plaintiff Thomas M. Hubert is one of two DDCC members representing Dover Ward 3, District 1, residing at 32 Oram Drive, Dover, New Jersey 07801.

11.     Plaintiff Maureen E. McGrath is one of two DDCC members representing Dover Ward 3, District 1, residing at 11 Court Drive, Dover, New Jersey 07801.

12.     Plaintiff Michael J. Scarneo is one of two DDCC members representing Dover Ward 3, District 2, residing at 55 1st Street, Dover, New Jersey 07801.

13.     Plaintiff Arturo B. Santana is one of two DDCC members representing Dover Ward 4, District 2, residing at 386 E. McFarlan Street, Dover, New Jersey 07801.

14.     Plaintiff Orlando Suarez is a voter and taxpayer of the Town of Dover, residing at 10 Third Street, Dover, New Jersey 07801.

15.     Defendant Morris County Democratic Committee ("MCDC") is the duly constituted democratic county political party organized under N.J. Stat. Ann. § 19:5-3, with principal offices at 11 Washington Street, Morristown, New Jersey 07960.

16.     Defendant Darcy J. Draeger is the County Chair of the MCDC, residing at 200 Old Chester Road, Chester, New Jersey 07930.

17.     Defendant Michael DeLamater is the Vice Chair of the MCDC, residing at 40 Market Street, Apt. 302, Morristown, New Jersey 07960.

18.     Defendant Margaret C. Capodanno is the Secretary of the MCDC, residing at 115 Briarcliff Road, Mountain Lakes, New Jersey 07046.

19.     Defendant Steven G. Pylypchuk is the Treasurer of the MCDC, residing at 106 Early Street, Morristown, New Jersey 07960.

20.     Defendant Matthew B. Clarkin is the Operations Chair of the MCDC, residing at 1314 Gates Center, Morris Plains, New Jersey 07950.

21.     Defendant Meghan C. Lynch is one of two Finance Co-Chairs of the MCDC, residing at 41 Buckingham Center, Randolph, New Jersey 07869.

22.     Defendant Benjamin L. Weisman is one of two Finance Co-Chairs of the MCDC, residing at 405 Morris Avenue, Boonton, New Jersey 07005.

23.    Defendant Jason D. Navarino is the Parliamentarian of the MCDC, residing at 8 Tall Timber Drive, Morristown, New Jersey 07960.

24.    Defendant Amalia Duarte is the Grassroots Chair of the MCDC, residing at 22 Brockden Drive, Mendham, New Jersey 07945.

25.    Defendant Cara A. Parmigiani is the Innovation Chair of the MCDC, residing at 8 Franklin Place, Morris Plains, New Jersey 07950.

26.    Defendant Ann F. Grossi, Esq. is the duly elected County Clerk of the County of Morris, with principal offices at 10 Court Street, Morristown, New Jersey 07960.  Clerk Grossi is the official who maintains the official list of duly elected county committee members representing the Town of Dover, pursuant to N.J. Stat. Ann. § 19:13-20(a).  She is therefore named solely as a necessary party to this action.

27.    John and Jane Does IX are other elected officials or individuals who are not yet identified but have acted to deprive Plaintiffs of their due process and constitutional rights.

## **ORGANIZATION OF POLITICAL PARTIES**

28.    Political parties are organized into three layers: state committee, county committee and municipal committee.

29.    The members of the county committees of political parties "shall" be elected at the primary for the general election in the manner provided for by State law at such intervals as determined by the county committee's bylaws.  *See* N.J. Stat. Ann. § 19:5-3.

30.    County committee members shall reside in their election district or other unit (if organized differently than by election district) and shall take office on the third Saturday following the certification of the results of their election.

31.     At that time, the county committee for each political party reorganizes and elects a chair of the county party who does not need to be a member of the county committee but must reside in the county.

32.     County committees must adopt a constitution and bylaws, "ensuring fundamental fairness and the rights of the members of the county committee in the governance of the county party." N.J. Stat. Ann. § 19:5-3.2.

33.     Each political party also has a municipal committee, organized pursuant to state statute, N.J. Stat. Ann. § 19:5-2, et seq.

34.     The municipal committee members "shall consist of the elected members of the county committee resident in their respective municipalities." N.J. Stat. Ann. § 19:5-2.

35.     Similar to the county committee, the municipal committee has its own reorganization following the primary election in which its members are elected and select a chairperson, who does not have to be a member of the municipal county committee, but must reside in the municipality.

36.     County committee members and municipal committee members have statutory roles that go beyond simply volunteering to assist in election campaigns.

37.     For instance, under the New Jersey Municipal Vacancy Law, N.J. Stat. Ann. § 40A:16-1, et seq., municipal county committee members select three names to present to the governing body in the event of a vacancy in the office of mayor or the governing body, and if the remaining governing body fails to elect a replacement, the county committee shall actually select the person to serve in office.

38.     Similarly, but even more directly, when there is a vacancy in the office of county commissioner, the office is filled by the county committee members of the respective political party.  *See* N.J. Stat. Ann. § 40:41A-145.2.

39.     When a vacancy occurs in the office of State Senate or General Assembly, the county committee members who make up the legislative districts vote to select the interim successor.  *See* N.J. Stat. Ann. § 19:27-11.2.

40.     The county committee and municipal committee members also select candidates to fill vacancies in nominees if a candidate dies or resigns from serving as a candidate.  *See* N.J. Stat. Ann. § 19:13-19, -20.

41.     County committee members also select the state committee members, who in turn select a state chair and vote on national committee members.

42.     The state chair has his or her own set of statutory powers, including a say in appointments to redistricting commissions, and breaking ties on appointments to Boards of Election.

43.     In sum, county committee and municipal committee members are a legislatively created structure which in certain instances provide direct and significant authority over government actions.

## **MCDC BYLAWS**

44.     Pursuant to statute, the MCDC has a constitution and bylaws governing its operation.  The MCDC Constitution and Bylaws are attached hereto as **Exhibit A**.

45.     The following are the sections of relevance to this dispute:

46.     Article 1, Section 2 – sets forth the basic purposes of the MCDC.  These are generalized statements as to the broad goals and mission of the MCDC, including generally acting

as the official political party under N.J. Stat. Ann. § 19:5-3, finding democratic candidates for office and supporting their election, encouraging an interest in politics and discussion of ideas, and supporting the work of the municipal committees.

47.     Article II, Sections 1 and 2 – set forth that members are elected in the primary election and shall be two individuals from each voting district.

48.     Article II, Section 4 – sets forth the purported basis and power for removing members.  It is reprinted in its entirety as follows:

> The Executive Board of MCDC may recommend to the Members, or the executive committee of a Municipal Committee (or, in the absence of an executive committee, the Municipal Committee's elected officers) may recommend to the Municipal Committee, the suspension or removal of a Member for any of the following reasons:
> 1.  Failure to comply with these Bylaws or other rules or policies (including any code of conduct) adopted by the Executive Board, or the bylaws or rules of any Municipal Committee;
> 2.  Failure to participate as a Member;
> 3.  Conviction of any criminal offense; or
> 4.  Any other behavior deemed to be detrimental to MCDC and/or the Municipal Committee.
>
> Any Member being considered for suspension or removal shall be notified of the action being considered and have an opportunity to appear before the Executive Board or executive committee, as applicable, to argue against such action. Any suspension or removal (*a*) if recommended by the Executive Board, shall require the affirmative vote of two-thirds of the Members (not limited to those from the relevant municipality) present and voting at a duly convened meeting of MCDC to take effect, or (*b*) if recommended by the executive committee (or elected officers) of a Municipal Committee, shall require the affirmative vote of two-third of the Members comprising such Municipal Committee present and voting at a duly convened meeting of such Municipal Committee to take effect, and the Municipal Chair shall promptly notify the County Chair of any such suspension or removal. For the avoidance of doubt, a suspension or removal by MCDC or a Municipal Committee shall operate as a concurrent suspension or removal of the Member from both MCDC and the Municipal Committee.

49.    Article VI, entitled "MUNICIPAL COMMITTEES," generally conforms with N.J. Stat. Ann. § 19:5-2.

50.    Article VI, Section I – sets forth that members representing voting districts in a particular municipality shall comprise the municipality's municipal committee.  It further states that municipal committees may adopt their own bylaws.

51.    At no point in the MCDC Bylaws are there any specific duties or obligations imposed on the individual county committee members.

52.    Article VIII governs the selection of candidates and officeholders, and "applies only to county-wide offices or offices representing more than one municipality in Morris County." Except in the absence of any endorsement by a local organization, "Municipal Committees may determine primary election endorsements or fill vacancies with respect to such offices, subject to their own bylaws."

53.    Nothing within the endorsement process, or otherwise in the MCDC Bylaws, imposes an individual burden or requirement on county committee members to support the endorsed candidates in their own right or to prohibit them from supporting non-endorsed candidates.

**DDCC BYLAWS**

54.    The DDCC Bylaws are similar but not identical to the MCDC Bylaws.  A copy of the DDCC Bylaws is attached hereto as **Exhibit B**.

55.    The DDCC Bylaws do not impose any specific requirements or prohibition on individual municipal committee members' actions.

56.    Article VIII indicates that the municipal committee will make its own decisions on endorsements regardless of primary outcomes or other political pressures.

**THE DISPUTE BETWEEN PLAINTIFFS AND DEFENDANTS**

57.      At all relevant times, Plaintiffs James P. Dodd, Michelle Espada, Maria F. Borda, Guadalupe Barrios, Fernando Barrios, Washington J. Pro, Thomas J. Incera, Thomas H. McDonald, Thomas M. Hubert, Maureen E. McGrath, Michael J. Scarneo, and Arturo B. Santana were members of the DDCC and Maria S. Solines was the duly elected Chair ("DDCC Members").

58.      At all relevant times, Plaintiff Orlando Suarez was a voter and taxpayer of the Town of Dover who voted to elect the DDCC Members.

59.      At all relevant times, the MCDC Executive Board was comprised of Defendants Darcy J. Draeger, Michael DeLamater, Margaret C. Capodanno, Steven G. Pylypchuk, Matthew B. Clarkin, Meghan C. Lynch, Benjamin L. Weisman, Jason D. Navarino, Amalia Duarte, and Cara A. Parmigiani ("MCDC Executive Board").

60.      On December 16, 2025, the MCDC Executive Board emailed a letter to the DDCC Members, demanding their resignation from the DDCC. The MCDC Executive Board's letter dated December 16, 2025 is attached hereto as **Exhibit C**.

61.      If the DDCC Members refused to resign, the MCDC Executive Board threatened to seek their removal "for cause" alleging that the DDCC Members violated certain provisions of the MCDC Bylaws.

62.      The gravamen of the MCDC Executive Board's grievance with the DDCC Members was that they allegedly (1) endorsed Republican Jack Ciattarelli over Democrat Mikie Sherrill; (2) promoted the candidacy of a write-in candidate for Dover Town Council Ward 1 rather than the MCDC endorsed candidate, and that in doing so, the DDCC Members distributed materials in violation of the MCDC Anti-Harassment Policy; (3) supported a write-in candidate for Dover Town Council Ward 2 rather than the MCDC endorsed candidate; (4) supported a

11

Republican candidate for Dover Town Council Ward 3 rather than the MCDC endorsed candidate; and (5) supported incumbent Republican Assemblyman Christian Barranco for Assembly in LD25 rather than the MCDC endorsed Democrat candidates. *See* Exhibit C. A copy of the MCDC Anti-Harassment Policy is attached hereto as **Exhibit D**.

63. The MCDC Executive Board alleged that these actions constituted failure to comply with the MCDC Bylaws, Rules and Policies, including expectations regarding support for endorsed Democratic candidates under Article II, Section 4; conduct detrimental to the MCDC and its Municipal Committees, as described in Article II, Section 4; and activity inconsistent with the DDCC Members' duties under Article II, Section I, which the MCDC Executive Board contends requires the DDCC Members to support the Democratic Party's mission and efforts, as defined and interpreted by the Executive Board.

64. Pursuant to the MCDC Executive Board's resignation request, the DDCC Members had until December 22, 2025 at 5:00 PM to tender their resignation or otherwise indicate their intent to present a defense to their alleged wrongdoings.

65. If the DDCC Members provided notice of their resignation by December 22, 2025, the MCDC would then submit their resignation to the Morris County Clerk on the Members behalf.

66. Alternatively, if the DDCC Members decided to contest their removal, the matter would be heard and determined by the MCDC Executive Board before a full vote was taken by the MCDC Members.

67. On December 22, 2025, the DDCC Members generally responded by objecting to the process set forth in the MCDC Executive Board's resignation request and contesting the factual validity of the claims against them.

68.     The DDCC Members further contested the right of the MCDC to remove members at all; and even if the MCDC possessed such removal power, none of the alleged "offenses" enumerated in the Executive Board's resignation request were sufficient to warrant removal nor were they violative of the MCDC Bylaws, even if true.

69.     On Saturday, February 14, 2026, the MCDC Executive Board replied to the DDCC Members' December 22, 2025 email correspondence by setting another unilateral and arbitrary deadline to provide a response.

70.     The MCDC Executive Board advised the DDCC Members they had until Tuesday, February 17, 2026 at 5:00 PM to waive their appearance before the Executive Board or until Monday, February 23, 2026 to submit a written statement in lieu of an appearance.

71.     The DDCC Members responded by email dated February 17, 2026, reiterating their objections to the procedural and substantive efforts of the MCDC Executive Board to unilaterally remove them from their duly elected positions.

72.     The MCDC replied to the DDCC Members' February 17, 2026 email, reiterating the same talking points made in their prior correspondence.

73.     Upon information and belief, Anna Marie Amaya, one of the two Democratic County Committee members representing Dover Ward 4, District 3, resigned her position, as requested by the MCDC Executive Board.  A copy of the MCDC Resignation Form is attached hereto as **Exhibit E**.

74.     In March 2026, the MCDC Executive Board recommended the DDCC Members' removal to the full MCDC.

75.     On March 17, 2026, the MCDC Members received an electronic ballot regarding the MCDC Executive Board's request to support the removal of the DDCC Members.

13

76.    Upon information and belief, on March 17, 2026, the MCDC Executive Board held an informal Zoom meeting to brief the MCDC Members on the DDCC Members' removal.

77.    The DDCC Members were not invited and did not participate in such meeting.

78.    Beginning on March 17, 2026, the full MCDC voted on the removal of the DDCC Members.  A copy of the voting results is attached hereto as **Exhibit F**.

79.    On March 21, 2026, the MCDC Executive Board provided notice to the DDCC Members of their removal.

## JURISDICTION AND VENUE

80.    This Court has federal question jurisdiction over Plaintiffs' claims alleging violations of Plaintiffs' rights under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983 ("Section 1983"), pursuant to 28 U.S.C. § 1331.

81.    This Court has supplemental jurisdiction over Plaintiffs' claims alleging violations of Plaintiffs' rights under the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. § 10:6-1 et seq., pursuant to 28 U.S.C. § 1367.

82.    Venue is proper under 28 U.S.C. § 1391 as the locus of the relevant events is in the District of New Jersey.

## COUNT ONE
### REQUEST FOR INJUNCTIVE AND DECLARATORY RELIEF
### FIRST AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND 42 U.S.C. § 1983

83.    Plaintiffs hereby incorporate by reference the previous allegations of the Verified Complaint as if set forth at length herein.

84.    Under the Fourteenth Amendment and Section 1983, Plaintiffs have a First Amendment right to free speech, which includes voting for or supporting any candidate they wish to vote for and support in an election, regardless of political party.

14

85.     New Jersey statutes do not impose a gag-order or prohibit any actions of county committee members upon being elected to a county committee, and do not impose specific duties or prohibitions on the actions of individual committee members.

86.     Similarly, the MCDC Bylaws and DDCC Bylaws speak solely about the organizations' endorsement but impose no limitations on the actions or speech of individual members.

87.     The MCDC is a state actor to the extent that it is seeking to rely on N.J. Stat. Ann. § 19:5-3 to remove members for engaging in protected First Amendment activities it does not like.

88.     Unlike other states, New Jersey county committee members have statutory powers in addition to simply endorsing candidates that include directly selecting officeholders at the state, county and municipal level.

89.     County committee members are elected in a primary election by the voters of their respective election districts.

90.     The MCDC's actions, under color of state law, would permit the MCDC to overturn the will of the voters of Dover to elect Plaintiffs as their party representatives, and would permit the MCDC, in its sole discretion, to remove and replace members with members of their own choosing, who in turn vote on filling vacancies and utilizing statutory powers.

91.     The MCDC and its Executive Board's actions violate Plaintiffs' First Amendment and Fourteenth Amendment rights.

92.     To the extent that removal for cause is implicitly permitted by N.J. Stat. Ann. § 19:5-3, the statute is unconstitutionally vague as it fails to define what is meant by "for cause" and it is unconstitutional as applied here as the MCDC Bylaws failed to provide the necessary notice and definitions to the DDCC Members.

93.    Based on the foregoing, Plaintiffs have and will continue to be harmed.

WHEREFORE, Plaintiffs respectfully request that this Court:

(a)    Invalidate the actions of the MCDC and reinstate the DDCC Members that were

wrongfully and unilaterally removed by the MCDC from their elected positions;

(b)    Enjoin the Morris County Clerk from removing Plaintiffs from the official list of

MCDC Members pending further order of this Court; and

(c)    Award attorney's fees, costs, interest, and such other relief as the Court deems

equitable and just.

**COUNT TWO**
**REQUEST FOR INJUNCTIVE AND DECLARATORY RELIEF**
**DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED**
**STATES CONSTITUTION AND 42 U.S.C. § 1983**

94.    Plaintiffs hereby incorporate by reference the previous allegations of the Verified

Complaint as if set forth at length herein.

95.    Even if the MCDC has the power to remove county committee members, the

process in this case is unconstitutionally vague as the MCDC relies upon broad language and

improperly vague allegations that failed to provide the DDCC Members notice as to what conduct

could trigger removal as a general matter, or to provide Plaintiffs with any proof as to the specific

facts or allegations to enable them to defend themselves in this case.

96.    The MCDC Bylaws provide no specific prohibited conduct by members and instead

only provide general aspirational statements.

97.    Nothing in the MCDC Bylaws provides notice of any affirmative duties to act or

specifically prohibits conduct that could warrant removal.

98.     Defendants further accused Plaintiffs generally, not individually, of a variety of conduct, and failed to produce specific facts or allegations to support those contentions on an individualized basis.

99.     Nevertheless, Defendants demanded that Plaintiffs defend themselves at an inquisition by the Executive Board and then the full MCDC.

100.    Basic due process required that Defendants provide Plaintiffs with more than broad allegations before removing them from their duly elected positions.

101.    Defendants continue to act as state actors by utilizing state law to remove Plaintiffs from their elected positions.

102.     Based on the foregoing, Plaintiffs have and will continue to be harmed.

WHEREFORE, Plaintiffs respectfully request that this Court:

(a)     Invalidate the actions of the MCDC and reinstate the DDCC Members that were wrongfully and unilaterally removed by the MCDC from their elected positions;

(b)     Enjoin the Morris County Clerk from removing Plaintiffs from the official list of MCDC Members pending further order of this Court; and

(c)     Award attorney's fees, costs, interest, and such other relief as the Court deems equitable and just.

**<u>COUNT THREE</u>**
**REQUEST FOR INJUNCTIVE AND DECLARATORY RELIEF**
**VIOLATION OF THE NEW JERSEY CIVIL RIGHTS ACT**

103.    Plaintiffs hereby incorporate by reference the previous allegations of the Verified Complaint as if set forth at length herein.

104. Under the New Jersey Civil Rights Act, Plaintiffs have a First Amendment right to support candidates of their choosing and Due Process rights to meaningful notice and opportunity to be heard and present a defense before being removed from their elected positions.

105. Defendants have violated Plaintiffs' rights by failing to provide sufficient notice as to the factual basis for the allegations against each DDCC Member.

106. Defendants have also violated Plaintiffs' due process rights by seeking to impose vague and broad provisions in the MCDC Bylaws that would not provide proper notice to Plaintiffs as to what conduct would cause them to be subject to removal proceedings.

107. Based on the foregoing, Plaintiffs have and will continue to be harmed.

WHEREFORE, Plaintiffs respectfully request that this Court:

(a) Invalidate the actions of the MCDC and reinstate the DDCC Members that were wrongfully and unilaterally removed by the MCDC from their elected positions;

(b) Enjoin the Morris County Clerk from removing Plaintiffs from the official list of MCDC Members pending further order of this Court; and

(c) Award attorney's fees, costs, interest, and such other relief as the Court deems equitable and just.

## COUNT FOUR
### CONSPIRACY TO VIOLATE PLAINTIFFS' CONSTITUTIONAL RIGHTS
### 42 U.S.C. 1985

108. Plaintiffs hereby incorporate by reference the previous allegations of the Verified Complaint as if set forth at length herein.

109. Defendants conspired to institute a proceeding to punish Plaintiffs for engaging in protected speech and political activities that Defendants did not like.

110.    As punishment for that protected conduct, Defendants conspired to remove Plaintiffs from their elected party positions, on the basis of their political beliefs, and difference of opinion on which candidates to support for various offices.

111.    Defendants did so in a manner that further deprived Plaintiffs of notice as to the basis for the allegations or a meaningful opportunity to defend themselves before a fair and proper panel.

112.    The conspiracy acted to deprive Plaintiffs of the equal protection of the laws to which they are entitled.

113.    Based on the foregoing, Plaintiffs have and will continue to be harmed.

WHEREFORE, Plaintiffs respectfully request that this Court:

(a)    Invalidate the actions of the MCDC and reinstate the DDCC Members that were wrongfully and unilaterally removed by the MCDC from their elected positions;

(b)    Enjoin the Morris County Clerk from removing Plaintiffs from the official list of MCDC Members pending further order of this Court; and

(c)    Award attorney's fees, costs, interest, and such other relief as the Court deems equitable and just.

### COUNT FIVE
### FAILURE TO STOP UNCONSTITUTIONAL ACTION
### 42 U.S.C. 1986

114.    Plaintiffs hereby incorporate by reference the previous allegations of the Verified Complaint as if set forth at length herein.

115.    The MCDC and its Executive Board violated Plaintiffs' First Amendment and Fourteenth Amendment rights, as well as Plaintiffs' rights under the New Jersey Civil Rights Act.

116. The MCDC knew that its Executive Board did not make individualized allegations against the DDCC Members and instead only made general accusations against them that applied to the DDCC Members collectively and not on an individual basis.

117. The MCDC knew that its Executive Board did not present any proof as to the specific facts or allegations against the DDCC Members to enable them to defend themselves.

118. The MCDC knew that its Executive Board did not afford due process to the DDCC Members to contest the unsubstantiated allegations against them.

119. The MCDC and its Executive Board knew that the MCDC Bylaws provide no specific prohibited conduct by members and instead only provide general aspirational statements.

120. The MCDC and its Executive Board knew that the DDCC Members did not violate the MCDC Bylaws.

121. The MCDC and its Executive Board knew that the DDCC Members could not be removed for cause under Article II, Section 4 of the MCDC Bylaws.

122. The MCDC and its Executive Board knew that the process afforded to the DDCC Members, if any, was unconstitutionally vague.

123. The MCDC and its Executive Board knew that the DDCC Members did not receive advance notice as to what conduct could trigger their removal.

124. The MCDC and its Executive Board knew that the MCDC's Anti-Harassment Policy did not govern and was not otherwise applicable to the allegations against the DDCC Members and could not be used as a reason for removal.

125. The MCDC and its Executive Board knew that the DDCC Members did not violate the MCDC's Anti-Harassment Policy.

126. The MCDC and its Executive Board knew they did not possess the power to remove

20

the DDCC Members from their duly elected positions.

127.    The MCDC and its Executive Board knew they could not remove the DDCC Members for merely exercising their free speech rights.

128.    Yet, the MCDC Executive Board proceeded to recommend and present the removal of the DDCC Members to the full MCDC.

129.    The MCDC voted to remove the DDCC Members.

130.    The MCDC and its Executive Board unconstitutionally removed the DDCC Members from their duly elected positions.

131.    Despite having the power and an opportunity to intervene to prevent the aforementioned harm against Plaintiffs, the MCDC and its Executive Board failed to do so.

132.    Based on the foregoing, Plaintiffs have and will continue to be harmed.

WHEREFORE, Plaintiffs respectfully request that this Court:

(a)    Invalidate the actions of the MCDC and reinstate the DDCC Members that were wrongfully and unilaterally removed by the MCDC from their elected positions;

(b)    Enjoin the Morris County Clerk from removing Plaintiffs from the official list of MCDC Members pending further order of this Court; and

(c)    Award attorney's fees, costs, interest, and such other relief as the Court deems equitable and just.

**COUNT SIX**
**VIOLATION OF THE MCDC BYLAWS**

133.    Plaintiffs hereby incorporate by reference the previous allegations of the Verified Complaint as if set forth at length herein.

134.    The conduct alleged by Defendants, even if true and provable, does not violate any provision of the MCDC Bylaws and cannot serve as a basis for removal.

21

135. Nothing in the MCDC Bylaws prohibits a county committee member from supporting candidates other than those endorsed by the MCDC in its official capacity.

136. Nor does anything in the MCDC Bylaws state that a county committee member may be removed for not supporting any MCDC's preferred candidate.

137. Several of the "allegations" against Plaintiffs are based upon local endorsement over which the MCDC has no authority as it does not endorse local candidates.

138. The MCDC Bylaws specifically state they leave it to the local municipal committees to make decisions on local candidates.

139. Further, the MCDC Anti-Harassment Policy is inapplicable to local races.

140. But even if the Anti-Harassment Policy were applicable, it only governs the treatment of employees and campaign volunteers to be free from harassment or discrimination.  It does not apply to campaign materials or election conduct.

141. The MCDC Bylaws also conflict with state law, which does not provide the MCDC with any authority over the selection or removal of the municipal chair.

142. Based on the foregoing, Plaintiffs have and will continue to be harmed.

WHEREFORE, Plaintiffs respectfully request that this Court:

(a)     Invalidate the actions of the MCDC and reinstate the DDCC Members that were wrongfully and unilaterally removed by the MCDC from their elected positions;

(b)     Enjoin the Morris County Clerk from removing Plaintiffs from the official list of MCDC Members pending further order of this Court; and

(c)     Award attorney's fees, costs, interest, and such other relief as the Court deems equitable and just.

## COUNT SEVEN
## VIOLATION OF VOTING RIGHTS

143. Plaintiffs hereby incorporate by reference the previous allegations of the Verified Complaint as if set forth at length herein.

144. The DDCC Members were elected by the voters of the Town of Dover.

145. Plaintiff Suarez is a voter and taxpayer of the Town of Dover who voted for the DDCC Members to be their elected representatives.

146. By removing the DDCC Members from their duly elected positions, Defendants have violated Plaintiff Suarez's right to vote and select his representatives, and violated his First Amendment Freedom of Association.

147. Based on the foregoing, Plaintiffs have and will continue to be harmed.

WHEREFORE, Plaintiffs respectfully request that this Court:

(a) Invalidate the actions of the MCDC and reinstate the DDCC Members that were wrongfully and unilaterally removed by the MCDC from their elected positions;

(b) Enjoin the Morris County Clerk from removing Plaintiffs from the official list of MCDC Members pending further order of this Court; and

(c) Award attorney's fees, costs, interest, and such other relief as the Court deems equitable and just.

By:     /s/ Matthew C. Moench
        Matthew C. Moench, Esq.
        **KING, MOENCH & COLLINS LLP**
        51 Gibraltar Drive, Suite 2F
        Morris Plains, New Jersey 07950
        Phone: (973) 998-6860
        mmoench@kingmoench.com
        *Attorneys for Plaintiffs*

Dated: May 9, 2026

23

## VERIFICATION

I, James P. Dodd, being duly sworn, depose and say that I have read the foregoing Verified Complaint and know the contents thereof. The statements contained in the Verified Complaint are true to the best of my personal knowledge.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

5/5/26

_____
James P. Dodd

Dated:

24

**VERIFICATION**

I, Maria S. Solines, being duly sworn, depose and say that I have read the foregoing Verified Complaint and know the contents thereof.  The statements contained in the Verified Complaint are true to the best of my personal knowledge.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Maria S. Solines

Dated: 5/5/2026

## VERIFICATION

I, Michelle Espada, being duly sworn, depose and say that I have read the foregoing Verified Complaint and know the contents thereof. The statements contained in the Verified Complaint are true to the best of my personal knowledge.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____
Michelle Espada

Dated: 5/5/2026

26

## VERIFICATION

I, Maria F. Borda, being duly sworn, depose and say that I have read the foregoing Verified Complaint and know the contents thereof. The statements contained in the Verified Complaint are true to the best of my personal knowledge.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____
Maria F. Borda

Dated: 5/5/2026

27

**VERIFICATION**

I, Guadalupe Barrios, being duly sworn, depose and say that I have read the foregoing Verified Complaint and know the contents thereof. The statements contained in the Verified Complaint are true to the best of my personal knowledge.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____
Guadalupe Barrios

Dated: 5/5/2026

28

## **VERIFICATION**

I, Fernando Barrios, being duly sworn, depose and say that I have read the foregoing Verified Complaint and know the contents thereof.  The statements contained in the Verified Complaint are true to the best of my personal knowledge.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Fernando Barrios

Dated:

05/05/2026

29

## **VERIFICATION**

I, Washington J. Pro, being duly sworn, depose and say that I have read the foregoing Verified Complaint and know the contents thereof.  The statements contained in the Verified Complaint are true to the best of my personal knowledge.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____
Washington J. Pro

Dated: 5/5/2026

## VERIFICATION

I, Thomas J. Incera, being duly sworn, depose and say that I have read the foregoing Verified Complaint and know the contents thereof. The statements contained in the Verified Complaint are true to the best of my personal knowledge.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Thomas J. Incera

Dated: O6 MAY 2026

31

## VERIFICATION

I, Thomas H. McDonald, being duly sworn, depose and say that I have read the foregoing Verified Complaint and know the contents thereof. The statements contained in the Verified Complaint are true to the best of my personal knowledge.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

5/6/26

_____
Thomas H. McDonald

Dated:

32

## VERIFICATION

I, Thomas M. Hubert, being duly sworn, depose and say that I have read the foregoing Verified Complaint and know the contents thereof.   The statements contained in the Verified Complaint are true to the best of my personal knowledge.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____
Thomas M. Hubert

Dated:

5-6-26

33

## VERIFICATION

I, Maureen E. McGrath, being duly sworn, depose and say that I have read the foregoing Verified Complaint and know the contents thereof. The statements contained in the Verified Complaint are true to the best of my personal knowledge.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Maureen E. McGrath

Dated: 5/6/26

34

## VERIFICATION

I, Michael J. Scarneo, being duly sworn, depose and say that I have read the foregoing Verified Complaint and know the contents thereof. The statements contained in the Verified Complaint are true to the best of my personal knowledge.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____
Michael J. Scarneo

May 6, 2026
Dated:

35

## VERIFICATION

I, Arturo B. Santana, being duly sworn, depose and say that I have read the foregoing Verified Complaint and know the contents thereof. The statements contained in the Verified Complaint are true to the best of my personal knowledge.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Arturo B. Santana

Dated: 5-6-26

36

## VERIFICATION

I, Orlando Suarez, being duly sworn, depose and say that I have read the foregoing Verified Complaint and know the contents thereof.  The statements contained in the Verified Complaint are true to the best of my personal knowledge.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Orlando Suarez

Dated: 5-6-26

37

# EXHIBIT A

**CONSTITUTION AND BYLAWS**
**OF**
**MORRIS COUNTY DEMOCRATIC COMMITTEE, INC.**

**As Amended and Restated as a Single Document Effective June 24, 2023**

**ARTICLE I**
**NAME AND PURPOSE**

Section 1.     This organization shall be known as "Morris County Democratic Committee, Inc.", and hereinafter referred to as "MCDC."

Section 2.     The purposes of MCDC are:
1. To serve as the county committee, as described in N.J.S.A. 19:5-3, of the Democratic Party in and for the County of Morris, State of New Jersey ("Morris County");
2. To provide the voters of Morris County with Democratic candidates for election to public office;
3. To campaign for Democratic candidates and with respect to issues of importance to Democratic voters;
4. To assist Democratic elected officials representing Morris County residents in the performance of their duties;
5. To encourage an interest in politics and public affairs in Morris County;
6. To provide a forum for the discussion and exchange of ideas on political issues; and
7. To support the work of the municipal committees of the Democratic Party in Morris County (each, a "Municipal Committee").

Section 3.     MCDC is incorporated under the New Jersey Nonprofit Corporation Act, Title 15A of the New Jersey Statutes ("Title 15A"), by virtue of the filing of a certificate of incorporation with the Treasurer of the State of New Jersey on May 23, 2008 (as subsequently amended, the "Certificate of Incorporation").  The protections and other provisions of Title 15A are intended to apply to MCDC, to the extent not inconsistent with the requirements of Title 19 of the New Jersey Statutes ("Title 19") or of this constitution and the bylaws set forth herein (collectively, these "Bylaws"), which are adopted pursuant to N.J.S.A. 19:5-3.2.

Section 4.     MCDC shall possess all the powers of a nonprofit corporation under Title 15A and of a county committee of a political party under Title 19, in each case consistent with the applicable rules and requirements of the New Jersey State Democratic Committee (the "State Committee").

**ARTICLE II**
**MEMBERSHIP**

1

Section 1.      Pursuant to N.J.S.A. 19:5-3, the members of MCDC (the "Members") shall be the registered Democrats residing in Morris County who are elected pursuant to this Section and Section 2 of this Article or appointed as provided in Section 5 of this Article.  There shall be up to two members elected to MCDC per voting district in Morris County.  While it is preferable that the two Members from each voting district be of different gender identities, neither seat from any voting district shall be reserved for or limited to a person of any particular gender.

Section 2.      Members shall be elected at the primary election in odd-numbered years, and shall take office immediately upon the certification of the results of their election.  Except as provided in Section 3 or Section 4 of this Article, Members shall serve a term of two years, concluding upon the certification of the results of the election of their successors.

Section 3.      A Member may resign from MCDC upon written notice to the Chair of the Member's Municipal Committee (a "Municipal Chair").  Municipal Chairs shall promptly notify the Chair of MCDC (the "County Chair") of any such resignation.  In addition, a Member shall be deemed to have resigned from MCDC upon ceasing to be a resident of the voting district from which elected or of the municipality from which appointed pursuant to Section 5 of this Article.  Members must promptly notify their Municipal Chair of any change of address or other contact information.

Section 4.      The Executive Board of MCDC may recommend to the Members, or the executive committee of a Municipal Committee (or, in the absence of an executive committee, the Municipal Committee's elected officers) may recommend to the Municipal Committee, the suspension or removal of a Member for any of the following reasons:
1. Failure to comply with these Bylaws or other rules or policies (including any code of conduct) adopted by the Executive Board, or the bylaws or rules of any Municipal Committee;
2. Failure to participate as a Member;
3. Conviction of any criminal offense; or
4. Any other behavior deemed to be detrimental to MCDC and/or the Municipal Committee.

Any Member being considered for suspension or removal shall be notified of the action being considered and have an opportunity to appear before the Executive Board or executive committee, as applicable, to argue against such action.  Any suspension or removal (*a*) if recommended by the Executive Board, shall require the affirmative vote of two-thirds of the Members (not limited to those from the relevant municipality) present and voting at a duly convened meeting of MCDC to take effect, or (*b*) if recommended by the executive committee (or elected officers) of a Municipal Committee, shall require the affirmative vote of two-third of the Members comprising such Municipal Committee present and voting at a duly convened meeting of such Municipal Committee to take effect, and the

Municipal Chair shall promptly notify the County Chair of any such suspension or removal.  For the avoidance of doubt, a suspension or removal by MCDC or a Municipal Committee shall operate as a concurrent suspension or removal of the Member from both MCDC and the Municipal Committee.

Section 5.    In the event of any vacancy on MCDC for any reason, including the failure to fill a seat at the relevant primary election or due to a resignation, deemed resignation, or removal pursuant to this Article, the relevant Municipal Chair may nominate a registered Democrat residing in the relevant municipality to fill such vacancy for the remainder of the applicable term.  Priority shall be given to individuals residing in the voting district for which there is a vacancy.  Any such nomination shall be subject to the approval of a majority of the Members comprising the relevant Municipal Committee present and voting at a duly convened meeting of such Municipal Committee.  Municipal Chairs shall promptly inform the County Chair of any vacancies so filled.

## ARTICLE III
## OFFICERS AND STAFF

Section 1.    A County Chair, Vice Chair, Secretary, Treasurer, and Operations Chair shall be elected from among the registered Democrats residing in Morris County at each organizational meeting of MCDC, which shall be held on or before the third Saturday following each primary election at which Members are elected (an "Organizational Meeting").  Qualified individuals wishing to be elected County Chair must deliver to the Secretary or Executive Director, at least 15 days prior to the Organizational Meeting (or other meeting of MCDC at which the County Chair will be elected), (*a*) a statement indicating the individual's desire to seek the office of County Chair, (*b*) the names of candidates for Vice Chair, Secretary, Treasurer, and Operations Chair to run with the County Chair candidate as a slate, and (*c*) the name of a Member to enter the names of the candidates on the slate into nomination at the meeting.

At the meeting, if the presiding officer pursuant to these Bylaws is a candidate for an office to be elected at the meeting, that person shall designate as Temporary Chair to preside over the election:
1.  The Executive Director, if one is then in office and that person is not a candidate for an office to be elected at the meeting;
2.  A former County Chair, if one is present at the meeting and not a candidate for an office to be elected at the meeting, and if more than one is present, the one whose service as such began first and who is not a candidate for an office to be elected at the meeting; or
3.  The longest serving Municipal Chair present who is not a candidate for an office to be elected at the meeting.

Each Member so identified as nominating a slate of candidates shall be recognized by the presiding officer or Temporary Chair (as applicable) for the purpose of delivering

3

a nominating speech, and each candidate for County Chair, Vice Chair, Secretary, Treasurer, and Operations Chair shall be allowed to address the Members, *provided* that the total time allocated for the nomination of a single slate of candidates and for members of that slate to address the Members shall not exceed 10 minutes.  Floor nominations shall not be permitted.  The Members shall elect the officers by slate, and candidates on a slate receiving votes from a majority of the Members present and voting shall be elected and shall serve until their successors are elected and qualified, except as provided in Section 2 of this Article.

Section 2.  An officer may resign upon written notice to the County Chair or, in the case of the County Chair's resignation, upon written notice to the Secretary.  An officer shall be deemed to have resigned upon ceasing to be a resident of Morris County.  An officer may be removed by the Members on the recommendation of the Executive Board in a manner similar to that provided for Members in Article II, Section 4 of these Bylaws.

Section 3.  In the event of a vacancy in the office of County Chair, the Vice Chair shall serve as Acting Chair until the election of a new County Chair.  A special meeting of the Members shall be convened within 45 days of the vacancy arising, or of the announcement of a resignation to take effect upon the election of a new County Chair, to elect a new County Chair and other officers as provided in Section 1 of this Article.  In the event of a vacancy in any other elected office of MCDC, the County Chair shall nominate a registered Democrat residing in Morris County to fill the vacancy, subject to the approval of the Executive Board.

Section 4.  The County Chair shall preside at all meetings of the Members and the Executive Board and serve as chief executive officer of MCDC, with such powers as are usually vested in the chairperson, president, or chief executive officer of an organization.  The County Chair shall be responsible for keeping Morris County's representatives on the State Committee and the Municipal Chairs informed of the activities of MCDC and for regularly gathering input from them.  Subject to Article IV, Section 5 of these Bylaws, the County Chair may authorize unbudgeted expenditures of MCDC's funds, in each instance up to $2,500.  The County Chair shall have such other duties and powers as provided elsewhere in these Bylaws or as delegated by the Executive Board.

Section 5.  The Vice Chair shall assist the County Chair in the performance of the County Chair's duties, serve as Acting Chair in the absence of the County Chair, and have such other duties and powers as provided elsewhere in these Bylaws or as delegated by the Executive Board or the County Chair.  Subject to Section 10 of this Article, the Vice Chair need not be of a different sex or gender than the County Chair.

Section 6.  The Secretary shall maintain or cause to be maintained an accurate record of the proceedings of each meeting of the Members and of the Executive Board,

4

including all elections and other votes, and all other non-financial records of MCDC. The Secretary shall be responsible for maintaining the official list of Members, regularly notifying the Morris County Clerk of any changes to such list, and providing or causing to be provided all notices to the Members required by these Bylaws. The Secretary shall also have such other duties and powers as provided elsewhere in these Bylaws or as delegated by the Executive Board or the County Chair.

Section 7.   The Treasurer shall maintain or cause to be maintained all financial records of MCDC, including accurate records of all receipts and expenditures, and of all deposits and withdrawals from MCDC's bank and other accounts. The Treasurer shall keep the County Chair and Executive Board regularly informed as to the financial status of MCDC, and shall be responsible for all financial statements, disclosures, reports, and returns required by law to be filed by or with respect to MCDC. The Treasurer shall also have such other duties and powers as provided elsewhere in these Bylaws or as delegated by the Executive Board or the County Chair.

Section 8.   The Operations Chair shall assist the County Chair in overseeing (*a*) the office or offices of MCDC, its Executive Director and other staff, and other non-financial assets; (*b*) the coordination of relevant Municipal Committee assets; and (*c*) other logistics pertaining to ongoing county-level party operations. The Operations Chair shall also have such other duties and powers as provided elsewhere in these Bylaws or as delegated by the Executive Board or the County Chair.

Section 9.   The County Chair may also appoint (from among the elected officers, the Members, or other suitable individuals) (*a*) one or more Regional Vice Chairs and (*b*) one or more of the following additional officers of MCDC, each to serve at the pleasure of the County Chair:
1. Parliamentarian – to advise the County Chair or the presiding officer at any meeting on the requirements of applicable law, these Bylaws, and *Robert's Rules of Order* as they pertain to the conduct of meetings, elections, and other procedures contemplated by these Bylaws, and to otherwise assist in maintaining order and decorum at meetings
2. Assistant Secretary – to assist the Secretary in the preparation and authentication of MCDC's non-financial records, and to act in place of the Secretary in the Secretary's absence
3. Deputy Treasurer – to assist the Treasurer in maintaining the financial records of MCDC, and to act in place of the Treasurer in the Treasurer's absence
4. Fundraising Chair – to oversee fundraising efforts in support of MCDC and its candidates
5. Outreach Chair – to work with the Executive Director and Municipal Chairs to register Democratic voters, recruit Members, and identify potential Democratic candidates for public office

5

Section 10.    The County Chair may appoint, with the approval of the Executive Board, an Executive Director to carry out the day-to-day operations of MCDC, including logistics, record keeping, campaign and other political communications, and, in concert with the Municipal Chairs, field operations in connection with campaigns for public office in the county.  The Executive Board may also authorize the creation and compensation for additional staff positions, in each case to be hired by the County Chair.  The Executive Board may also cause MCDC to engage additional service providers, including accountants and legal counsel, as independent contractors.

Section 11.    Consistent with the values of the Democratic Party, diversity – including with respect to race, ethnicity, gender identity, sexual orientation, and geographic distribution throughout Morris County – is strongly encouraged in assembling slates of candidates for elected officers of MCDC, appointing additional officers and Executive Board members, hiring staff and vendors, and selecting candidates for public offices.

## ARTICLE IV
## EXECUTIVE BOARD

Section 1.    The Executive Board shall be comprised of all of the elected and appointed officers of MCDC.  If there are fewer than 11 individuals serving as officers at any given time, the County Chair may appoint additional individuals to serve on the Executive Board at the pleasure of the County Chair, *provided* that the total membership of the Executive Board may not exceed 11.

Section 2.    The Executive Board shall be empowered to approve budgets authorizing the expenditure of MCDC's funds, authorize unbudgeted expenditures of MCDC's funds in excess of $2,500, determine policy for MCDC, oversee the Executive Director's performance, and perform such other duties as provided elsewhere in these Bylaws.  All powers of MCDC not reserved to the Members by Title 15A, Title 19, or these Bylaws, or delegated to one or more officers by these Bylaws, shall be reserved to the Executive Board unless delegated by the Executive Board to one or more individuals or committees.

Section 3.    The Executive Board shall meet at such regular intervals at it determines to be appropriate.  The County Chair may call additional meetings of the Executive Board from time to time, and shall call a special meeting of the Executive Board at the request of at least three Executive Board members, in each case upon notice to the Executive Board members specifying the date, time, location, and purpose of the meeting at least 7 days prior to the meeting date, or at least 48 hours prior to the meeting in emergency situations.  Executive Board meetings may be held in person at such locations as the Executive Board determines to be appropriate, or may be held partially or entirely electronically or telephonically (and members so participating shall be deemed present for all purposes), so long as all participating Executive Board can hear and be heard by one another in real time.  *Robert's*

6

*Rules of Order* may be referred to for guidance and invoked by the presiding officer at any meeting of the Executive Board if the presiding officer deems it necessary to do so.

Section 4.    No official action shall be taken at an Executive Board meeting unless a quorum, consisting of a majority of the currently serving members of the Executive Board, is present.  The presiding officer shall not declare the absence of a quorum until 15 minutes after the starting time designated for the meeting.  An act of a majority present at a meeting of the Executive Board shall constitute an act of the Executive Board.  In addition, any action that may be taken at a meeting of the Executive Board may be taken without a meeting by unanimous written consent, including by way of electronic message.

Section 5.    No officer or other Executive Board member may act on any matter, including by voting on the matter at an Executive Board meeting, if the individual has a direct or indirect financial interest in the matter, including through business, investment, or family, unless the financial interest is fully disclosed to the other members of the Executive Board and the Executive Board determines that no conflict of interest exists.  A financial interest may include an ownership or investment interest in a proposed counterparty to a transaction being considered (excluding ownership of public securities comprising less than 5% of the counterparty's outstanding debt or equity), or compensation to be gained from the matter being considered.

## ARTICLE V
## COMMITTEES AND CAUCUSES

Section 1.    The Executive Board may from time to time create and appoint members of the Executive Board to serve on committees of the Executive Board.  Each of such committees shall consist of at least three members, and shall have and may exercise such authority of the Executive Board as the Executive Board delegates to it, *provided* that no such committee may elect or appoint any Executive Board member, submit to the Members any recommendation requiring their approval, or amend or repeal any action previously taken by the Executive Board.

Section 2.    The Executive Board or the County Chair may from time to time establish other committees of MCDC, consisting of such members as the Executive Board or County Chair determines, to perform certain volunteer functions on behalf of MCDC or to provide advise or make recommendations to MCDC, its officers, or the Executive Board.  The Executive Board or the County Chair may also from time to time establish caucuses, whose membership shall be open to all eligible individuals, to advocate for and support the interests of certain constituencies of the Democratic Party in Morris County.  Among such caucuses shall be the Morris County Elected Democratic Caucus, whose members shall consist of all Democratic elected officials representing any residents of Morris County at any level of government (the "Democratic Elected Officials"); the Morris County

7

Democratic Women's Caucus; and the Morris County Young Democrats. MCDC caucuses may retain their own funds separate from those of MCDC. For the avoidance of doubt, (*a*) committees and caucuses established pursuant to this Section may not exercise any of the officers' or the Executive Board's authority, and (*b*) this Section shall not apply to Municipal Committees.

## ARTICLE VI
## MUNICIPAL COMMITTEES

Section 1.    The Members representing voting districts in a particular municipality shall comprise that municipality's Municipal Committee, as provided in N.J.S.A. 19:5-2. Municipal Committees may adopt their own bylaws, not inconsistent with these Bylaws. Such bylaws may identify additional duties of Members, and may establish a class of associate members that participate in the meetings or activities of the Municipal Committee but that are not Members of MCDC or entitled to vote on or with respect to any official matter that may come before the Municipal Committee under these Bylaws or applicable law.

Section 2.    Each Municipal Committee shall elect from among the registered Democrats residing in its municipality a Municipal Chair, a Vice Chair, a Secretary, a Treasurer, and such other officers as provided in the Municipal Committee's bylaws (other than officers to be appointed by one or more of the elected officers pursuant to such bylaws). Such officers shall be elected every two years, at an organizational meeting to be held preferably prior to each Organizational Meeting of MCDC but in no event later than the third Saturday following the certification of the results of each primary election at which Members are elected, and whenever vacancies arise that are not otherwise provided for under the Municipal Committee's bylaws, and shall serve until their successors are elected and qualified. Any election of Municipal Committee officers shall be promptly certified to the County Chair by the Municipal Chair, the Secretary of the Municipal Committee (the "Municipal Secretary"), and at least two other Members from the municipality who were not elected to any office of the Municipal Committee. If a Municipal Committee fails to timely elect officers, the County Chair may convene a meeting of the Municipal Committee for this purpose.

Section 3.    An officer of a Municipal Committee may resign upon written notice to the County Chair and to the Municipal Chair or, in the case of the Municipal Chair's resignation, the Municipal Secretary. An officer shall be deemed to have resigned upon ceasing to be a resident of the relevant municipality. An officer may be removed by the Members on the recommendation of the Executive Board or by the Municipal Committee on the recommendation of its executive committee (or its elected officer), in each case in a manner similar to that provided for Members in Article II, Section 4 of these Bylaws.

8

Section 4.       The officers of a Municipal Committee officers shall have the duties bestowed upon them by applicable law, these Bylaws, and the bylaws of the Municipal Committee, *provided* that among the duties of the Municipal Secretary shall be to attest to all notices given by the Municipal Chair to the County Chair with respect to resignations, suspensions, removals, and vacancy appointments of Members.

Section 5.       Each Municipal Committee shall meet at such regular intervals (*e.g.*, monthly), and in such locations or through such electronic or telephonic means, as it determines to be appropriate.  The Municipal Chair may call additional meetings of the Municipal Committee from time to time, and shall call a special meeting of the Municipal Committee at the request of at least 25% of the Members from such municipality.  Except as otherwise provided in the Municipal Committee's bylaws, notice of meetings shall be given to the relevant Members at least seven days prior to the meeting date, or at least 48 hours prior to the meeting in emergency situations.

Section 6.       No official action shall be taken at a Municipal Committee meeting unless a quorum, consisting of at least one elected officer and at least 25% of the Members from such municipality, is present.  Except as otherwise required by law or the bylaws of the Municipal Committee, an act of a majority present and voting at a meeting of the Municipal Committee shall constitute an act of the Municipal Committee.

Section 7.       Each Municipal Committee may retain its own funds separate from those of MCDC.

### ARTICLE VII
### MEMBERSHIP MEETINGS AND VOTING

Section 1.       The Members of MCDC shall meet at such times and in such places (including wholly or partially via electronic or telephonic means) as determined by the Executive Board or the County Chair.  These meetings shall include Organizational Meetings governed by Article III and this Article, and meetings to endorse candidates in primary elections or fill vacancies in elected offices (including the State Committee) or on general election ballots governed by Article VIII and this Article. In addition, the County Chair shall call special meetings of the Members upon the written request of at least 25 Members representing a majority of the municipalities in Morris County.

Section 2.       Only Members on the list of members of MCDC maintained by the Morris County Clerk at the conclusion of the business day immediately prior to any meeting may vote at such meeting.  Notwithstanding the foregoing, (*a*) when endorsing candidates in primary elections or filling vacancies in elected offices or on general election ballots for positions that serve more than one municipality in Morris County but less than the entire county, only the Members residing in the relevant municipalities shall be entitled to vote, and (*b*) only for primary election

9

endorsements governed by Article VIII, the following individuals shall be treated as Members for notice, quorum, and voting purposes even if they are not otherwise Members: Morris County's representatives on the State Committee, Executive Board members, Democratic Elected Officials, Municipal Chairs, and caucus chairs.

Section 3.    Written notice stating the date, time, place, applicable dial-in or log-in instructions and electronic voting instructions, and purpose of any meeting of the Members shall be given to the Members no less than 10 nor more than 50 days before the date of the meeting, either personally, by telephone, by electronic message, or by mail.  Such notice shall include the names of candidates for elected officer positions, primary election endorsements, or filling vacancies in public office, on the State Committee, or on general election ballots, in each case to be voted on at the meeting, and any recommendation to suspend or remove a Member or amend or restate the Certificate of Incorporation or these Bylaws to be considered at the meeting.

Section 4.    No official action shall be taken at a meeting of the Members unless a quorum, consisting of at least 10% of the Members eligible to participate in such meeting, is present.  Members participating in an electronic vote to be conducted in connection with a meeting, and those participating in the meeting electronically or telephonically, shall be treated as present for all purposes.  The presiding officer shall not declare the absence of a quorum until 15 minutes after the starting time designated for the meeting.

Section 5.    Except as provided in Article VIII, each Member shall be entitled to cast one vote on any question put to the Members, and an act of a majority of the Members present and voting at a meeting shall constitute an act of MCDC.  Proxy voting shall not be permitted, but the County Chair or Executive Board may permit electronic voting.  If electronic voting is permitted, voice votes shall not be permitted except for deciding procedural motions.  If electronic voting is not permitted, voice votes shall be permitted in all instances except with respect to contested elections (other than for a Temporary Chair) and removals from office. All votes with respect to electing or removing individuals from positions shall be conducted via secret ballot.

Section 6.    All procedural questions not governed by the Certificate of Incorporation, these Bylaws, special rules adopted by the Members or applicable law shall be governed by the rules contained in the current edition of *Robert's Rules of Order Newly Revised*.  The presiding officer shall be permitted to remove or cause to be removed from any meeting non-Members, as well as Members who repeatedly or willfully violate the rules applicable to the meeting.

Section 7.    Whenever Members are required by law to meet with members of another county committee (*e.g.*, to fill a vacancy in the state legislature or on a general election ballot with respect to a federal or state legislative office), the bylaws of the county

10

committee with the greatest number of participating municipalities shall govern the conduct of the meeting.

## ARTICLE VIII
## SELECTION OF CANDIDATES AND OFFICEHOLDERS

Section 1.    This Article applies to decisions to endorse Democratic candidates for public office running in primary elections (*i.e.*, permitting them to run under the slogan "Morris County Democratic Committee, Inc." and be bracketed on the ballot with other candidates running under this slogan) and to fill vacancies in public office, on the State Committee, or on general election ballots for which New Jersey law empowers Members to propose candidates or directly fill the vacancy.  This Article generally applies only to county-wide offices or offices representing more than one municipality in Morris County.  Except for Section 5 of this Article, this Article does not apply to municipal offices or offices representing only one municipality in Morris County, as Municipal Committees may determine primary election endorsements or fill vacancies with respect to such offices, subject to their own bylaws.  For the avoidance of doubt, MCDC shall not be obligated to endorse a candidate in a primary election and may instead support an open primary, but in the event of an open primary, the County Chair may request that multiple candidates be bracketed together for the sake of ballot positioning (to the extent permitted by law).

Section 2.    At least two months prior to the filing deadline for each primary election and as soon as possible after the creation of a vacancy in a Democratic seat within the scope of this Article, the County Chair shall appoint, with respect to each public office within the scope of this Article to be voted on in such primary election or with respect to such vacant seat, a Screening Committee consisting of (*a*) at least two members of the Executive Board and (*b*) at least two Democratic Elected Officials who represent one or more relevant municipalities and who are not themselves candidates for the relevant office or seat (if there are two such individuals, otherwise one or none, as applicable).  It shall be the job of the Screening Committee to identify and encourage suitable candidates, invite interested persons to apply for consideration, interview and consider candidates, and make recommendations to the Members.  Any candidate wishing to be considered by the Members must first apply to the Screening Committee, by submitting a resume and completing any other form of application approved by the Screening Committee or the Executive Board before the deadline set by the Screening Committee.

Section 3.    At any Member meeting to consider an endorsement or fill a vacancy, each candidate considered by the Screening Committee shall have five minutes to address the Members.  Floor nominations shall not be permitted.  After each candidate has addressed the Members, the candidates shall leave the meeting, *provided* that a candidate who is also a Member shall be permitted to return to the meeting for the purpose of voting.  Once the candidates leave the meeting, a

11

representative of the Screening Committee shall report to the Members on its recommendation (if any).

Section 4.      Following the report of the Screening Committee, the Members shall proceed to vote by secret ballot.  Each Member shall have one vote for each position being considered, *provided* that the County Chair or the Executive Board may permit ranked-choice voting as provided in this Section.  The Secretary shall count the ballots or cause them to be counted and announce the results.  A successful candidate must receive a majority of the votes (first choice votes, in the case of ranked-choice voting) cast for the position such candidate is seeking (*e.g.*, if there are three seats on the Board of County Commissioners up for election and 300 voting Members, each successful candidate must receive at least 151 votes).  If no candidate receives a majority of the votes cast, the lowest vote-getter shall be eliminated and the Members shall proceed to a second ballot or, in the case of a ranked-choice vote, the second choice of Members whose first choice candidate was eliminated shall be counted as though they were first choice votes.  The process shall be repeated until the requisite number of candidates has obtained a majority of the votes cast (first choice votes or votes counted among first choice votes, in the case of ranked-choice voting), *provided* that, in the event of a two-way tie, the County Chair shall vote to break the tie.  Notwithstanding the foregoing, if the number of candidates does not exceed the number of positions to be filled, at any time after each candidate has addressed the Members, a motion to select the candidate or candidates by acclamation shall be in order, and adoption of such motion shall eliminate the need to comply with the balloting and voting requirements of this Section.  For the avoidance of doubt, the Executive Board may supplement these rules from time to time, such as by extending the hours of voting to beyond the timeframe for the relevant physical, electronic, or telephonic meeting.

Section 5.      If the Members or a Municipal Committee fails to endorse any primary election candidate for a particular public office for any reason, or endorses fewer than the number that voters may choose (e.g., if there are two General Assembly seats up for election in a legislative district but the Members only endorse one candidate), the County Chair may unilaterally cause MCDC to endorse a candidate for such office.

## ARTICLE IX
## ADMINISTRATIVE, FINANCIAL, AND LEGAL MATTERS

Section 1.      The principal office of MCDC shall be located at such place as the Executive Board may from time to time determine.  The Executive Board may also establish and determine the location of one or more additional offices of MCDC.

Section 2.      Correct books of account of the activities and transactions of MCDC, including a copy of the Certificate of Incorporation, a copy of these Bylaws, and all records of meetings of the Members and of the Executive Board, shall be kept at or

12

accessible in electronic form at the principal office of the Corporation.  MCDC shall retain documents for the durations specified on Schedule A of these Bylaws.

Section 3.    The Executive Board may authorize any one or more officers or agents to enter into any contract or execute and deliver any instrument in the name of and on behalf of MCDC, and such authority may be general or confined to specific instances.  Notwithstanding the foregoing, the County Chair may enter into and execute in the name of MCDC contracts and other instruments in the ordinary course that are authorized, either generally or specifically, by the Executive Board.

Section 4.    No loan shall be contracted on behalf of MCDC and no evidence of indebtedness shall be issued in its name unless authorized by a resolution of the Executive Board.  Such authority may be general or confined to specific instances.  MCDC shall not make any loan to, or guarantee any obligation of, any person unless the Executive Board determines that such loan or guarantee may reasonably be expected to benefit MCDC or further its purposes.

Section 5.    The Executive Board shall select such banks or depositories as it shall deem proper for MCDC's funds.  If any bank or depository so selected requires that MCDC or the Executive Board adopt one or more resolutions for the purpose of opening an account at such bank or depository, such resolution or resolutions shall be deemed adopted by virtue of the Members' adoption of these Bylaws, and the date of adoption of such resolution or resolutions shall be the date of adoption of these Bylaws (or such later date as may be required by such bank or depository).

Section 6.    MCDC's funds may be retained in whole or in part in cash or may be invested and reinvested from time to time in such property – real, personal, or otherwise – including stocks, bonds or other securities, as the Executive Board may deem desirable.

Section 7.    All checks, drafts, and other orders for the payment of money, notes, or other evidence of indebtedness issued in the name of MCDC shall be signed by one of the elected officers of MCDC, *provided* that, in the case of a payment of more than $2,500, such check, draft, or other order shall be signed by two of the elected officers.

Section 8.    MCDC's fiscal year shall be the calendar year.

Section 9.    MCDC shall indemnify its Members, officers, and staff, and their successors, heirs, and legal representatives (the "Indemnitees"), to the extent permitted by law, against all expenses and liabilities, including attorneys' fees, in connection with any proceeding involving an Indemnitee by reason of being or having been a Member, officer, or staff member, other than a proceeding by or in the right of MCDC, if (*a*) such Indemnitee acted in good faith in a manner reasonably believed to be in the best interest of MCDC, and (*b*) with respect to any criminal

13

proceeding, such Indemnitee had no reasonable cause to believe the relevant conduct was unlawful.  MCDC may advance to Indemnitees expenses, including attorneys' fees, for which such Indemnitees are indemnified pursuant to this Section.

Section 10.  MCDC may provide for the indemnification of or advancement of expenses to Indemnitees, and for other contingent liabilities of MCDC, including its caucuses and Municipal Committees, by purchasing liability insurance.

## ARTICLE X
## AMENDMENTS

Section 1.  The Certificate of Incorporation or these Bylaws may be amended or restated on the recommendation of the Executive Board and with the affirmative vote of at least two-thirds of the Members present and voting at any duly convened meeting of the Members.

14

SCHEDULE A

Document Retention Policy

| Item | Retention Period |
|---|---|
| Bank Statements & Reconciliations | 7 Years |
| Cancelled Checks - (Important Payments - purchases of property, tax payments, large or significant contracts) | Permanent |
| Cancelled Checks - (Ordinary) | 7 Years |
| Cash Books | Permanent |
| Cash Receipts and Disbursements | 7 Years |
| Construction Documents | Permanent |
| Contracts and Leases (Current) | Permanent |
| Contracts and Leases (Expired) | 7 Years |
| Corporate - Certificate of Incorporation & Bylaws | Permanent |
| Corporate - Minutes | Permanent |
| Correspondence (General) | 3 Years |
| Correspondence (Legal / Important) | Permanent |
| Duplicate Bank Deposit Slips | 3 Years |
| Email | 5 Years |
| Employee Assignments and Garnishments | 7 Years |
| Employee Benefit Plan Documents | 7 Years |
| Employee Payroll Records | 7 Years |
| Employee Payroll Reports (Federal, State or City Gov't) | 7 Years |
| Employee Personnel Records (After Termination) | 7 Years |
| Employee Personnel Records (Current) | Permanent |
| Employee Retirement & Pension Records | Permanent |
| Employee Timesheets | 7 Years |
| Employee Workman's Compensation Documents | 11 years |
| Employment Applications (Current Employees) | Permanent |
| Employment Applications (Other) | 1 Year |
| Finance - Accounts Payable Ledgers and Schedules | 7 Years |
| Finance - Accounts Receivable Ledgers and Schedules | 7 Years |
| Finance - Audit Reports of Independent Accountants | Permanent |
| Finance - Chart of Accounts | Permanent |
| Finance - Depreciation Schedules | Permanent |
| Finance - Expense Analyses & Distribution Schedules | 7 Years |
| Finance - Financial Statements (inc. Trial Balances) | Permanent |
| Finance - Fixed Asset Records & Appraisals | Permanent |
| Finance - General Ledgers | Permanent |

15

| | |
|---|---|
| Finance - Subsidiary Ledgers | Permanent |
| Finance - Tax Return Worksheets | 7 Years |
| Finance - Tax Returns | Permanent |
| Finance - Uncollectable Accounts & Write-offs | 7 Years |
| Finance - W-2 / W-4 / 1099 Forms, etc. | 7 Years |
| Grant Inquiries | 7 Years |
| Insurance - Accident Reports and Claims (Current Cases) | Permanent |
| Insurance - Accident Reports and Claims (Settled Cases) | Permanent |
| Insurance - Policies (Current) | Permanent |
| Insurance - Policies (Expired) | Permanent |
| Inventories | 7 Years |
| Invoices from Vendors | 7 Years |
| Invoices to Customers | 7 Years |
| Notes Receivable Ledgers | 7 Years |
| Paid Bills & Vouchers | 7 Years |
| Patents & Related Papers | Permanent |
| Physical Inventory Tags | 7 Years |
| Property Appraisals | Permanent |
| Property Documents - Deeds, Mortgages, etc. | Permanent |
| Stock and Bond Certificates (Cancelled) | 7 Years |
| Stock and Bond Records | Permanent |
| Vendor Payment Request Forms & Supporting Documents | 7 Years |
| Voucher Registers & Schedules | 7 Years |

16

# EXHIBIT B

# CONSTITUTION AND BYLAWS OF
# THE DOVER DEMOCRATIC COMMITTEE

**Adopted:** Sep 15, 2025

## ARTICLE I: NAME

This organization shall be known as "The Dover Democratic Committee," and hereinafter referred to as "DDC."

## ARTICLE II: PURPOSE AND POWERS

### Section 1: Purpose

The purposes of the DDC are:

1. To serve as the municipal committee in and for the Town of Dover in the County of Morris in the State of New Jersey;
2. To provide the voters of the Town of Dover with Democratic candidates for election to public office;
3. To campaign for and support Democratic candidates and issues of importance to Dover voters;
4. To assist the Democratic elected officials representing the Town of Dover in the performance of their duties;
5. To encourage an interest in politics and public affairs in the Town of Dover, County of Morris, and State of New Jersey; and
6. To provide a forum for the discussion and exchange of ideas on political issues

### Section 2: Powers

The DDC is the organization of elected representatives of the Democratic Party of the Town of Dover in the County of Morris, New Jersey, organized and functioning pursuant to and in furtherance of the Statutes of the State of New Jersey specifically but not limited to N.J.S.A. Title 19.

**PAGE | 1**

**ARTICLE III: MEMBERSHIP**

Section 1: Definition of Membership

The Members of The Dover Democratic Committee are the elected officers, the elected and appointed County Committee Members.

Section 2: Elections

Members shall be elected at the primary election in odd-numbered years and shall take office immediately upon the certification of the results of their election. Except as provided in Section 3 or Section 6 of this Article, Members shall serve a term of two years, concluding upon the certification of the results of the election of their successors.

Section 3: Member Resignations

A Member may resign from the DDC upon written notice to the Chair. The Chair shall promptly notify the County Chair of any such resignation.

In addition, a Member shall be deemed to have resigned from the DDC upon ceasing to be a resident of the town of Dover.

Section 4: Contact Information

Members must promptly notify the Chair or the Corresponding Secretary of any change of address or other contact information.

Section 5: Suspension or Removal

The Executive Board of the DDC may recommend to the Members the suspension or removal of a Member for any of the following reasons:

1. Failure to comply with these Bylaws or other rules or policies (including any code of conduct) adopted by the Executive Board;
2. Failure to participate as a Member;
3. Failure to appear at two consecutive Regular Membership Meetings; 4. Conviction of any criminal offense; or
5. Any other behavior deemed to be detrimental to the DDC

**PAGE | 2**

Any Member being considered for suspension or removal shall be notified of the action being considered and have an opportunity to appear before the Executive Board to argue against such action. Any suspension or removal (a) if recommended by the Executive Board, shall require the affirmative vote of two-thirds of the Members present and voting at a duly convened meeting of the DDC to take effect, and the Chair shall promptly notify the County Chair of any such suspension or removal. For the avoidance of doubt, a suspension or removal by the DDC shall operate as a concurrent suspension or removal of the Member from both the DDC and the MCDC.

Section 6: Filling of Vacancies

In the event of any vacancy within the DDC for any reason, including the failure to fill a seat at the relevant primary election or due to a resignation, deemed resignation, or removal pursuant to Article III, the Chair may appoint a registered Democrat residing within the Town of Dover to fill such vacancy for the remainder of the applicable term.

Priority shall be given to individuals residing in the ward and district for which there is a vacancy.

The Chair shall promptly inform the County Chair of any vacancies so filled.

Section 7: Prevailing Law

Nothing herein shall conflict with the Constitution and Laws of the United States of America, the Constitution and Laws of the State of New Jersey, the Constitution and By-Laws of the New Jersey State Democratic Committee, and the Constitution and By-Laws of the Morris County Democratic Committee.

**ARTICLE IV: REGULAR MEMBERSHIP MEETINGS**

Section 1: Definition

The term "meeting" shall include the bi-annual convention and any special meetings.

Section 2: Synonyms

The terms "convention," "meeting," and "endorsement meeting" are to be regarded as synonyms.

Section 3: Place and Time

Meetings of members of the DDC shall be held at such place within or outside of the Town of Dover as may be designated by the Executive Committee of the DDC and stated in a notice of meeting to be mailed via U.S. Mail or forwarded by electronic mail, text messaged, posted on the website of the DDC, or published on its Facebook page.

Section 4: Frequency of Meetings

Regular Membership Meetings of the DDC shall be held at least (4) times per calendar year, preferably quarterly.

Section 5: Notice of Meeting

Written notice of the time and place of Regular Meetings of the DDC shall be sent together with the proposed meeting agenda to each member at the physical or electronic address of such member at least five (5) days prior to the meeting.

Section 6: Meeting Minutes

The Recording Secretary of the DDC shall forward the Meeting Minutes of the last meeting to the members of the DDC in sufficient time so that they may be reviewed together with notice of the meeting.

Section 7: Quorum

Seven (7) members of the DDC, represented in person or virtually shall constitute a quorum for Regular and Special Meetings, including at least one (1) member from each Ward.

Thirteen (13) members of the DDC, represented in person or virtually shall constitute a quorum for the Bi-Annual Convention and Endorsement Meetings, including at least one (1) member from each Ward.

Section 8: Meeting Procedure

Meetings where changes to the bylaws, election of officers, and endorsement of candidates of the DDC are on the agenda shall be governed by the current edition of Robert's Rules of Order.

**PAGE | 4**

## ARTICLE V: SPECIAL MEETINGS

Section 1: Power to Call Meetings

Special Meetings of the DDC may be convened by the Chair or by a majority of the Executive Committee and must be called by the Chair upon the request of one-fourth (¼) of the members of the DDC.

Section 2: Notice of Special Meeting

Notice of the time, place, and purpose of such meeting shall be mailed or emailed together with a proposed agenda by the Secretary to each member of the DDC at least three (days) prior to the date thereof.

Section 3: Agenda Items

Only items appearing on the agenda (except adjournment) may be acted upon at such a meeting.

## ARTICLE VI: BI-ANNUAL CONVENTION

Section 1: Law

The Bi-Annual Convention of the members of the DDC shall be in conformance with N.J.S.A. Title 19.

Section 2: Date and Time

The Bi-Annual Convention of the members of the DDC must be held by the second Friday following the Primary Election for the General Election in odd-numbered years at an hour and place to be determined in a Notice to be given by the outgoing Chair of the DDC to each member-elect, at which annual meeting the members of the DDC shall elect a Chair, approve other officers as appointed by such Chair, and transact such other business as may properly come before the meeting. If the outgoing Chair fails to act, the outgoing Vice-Chair may do so in their stead.

Section 3: Notice of Bi-Annual Convention

Notice of the time and place of the Bi-Annual Convention shall be mailed or e-mailed to each member-elect of the DDC at the address of such member-elect as appears in the records of the Clerk of the Town of Dover, at least four (4) days before such a meeting.

Section 4: Presiding Chair

Either the outgoing Chair or Vice-Chair of the DDC shall preside at the annual meeting until a Temporary Chair is elected to preside during the election of the new Chair and until the new Chair shall have assumed office.

Section 5: Agenda

The order of business of the Bi-Annual Convention shall be:

1. Verification of Credentials
2. Officer Reports
3. Committee Reports
4. Old Business
5. Election of Temporary Chair
6. Election of Chair
7. Appointments
8. New Business
9. Adjournment

## ARTICLE VII: EXECUTIVE BOARD

Section 1: Members

The Executive Board shall consist of the Chair, Vice-Chair, Recording Secretary, Corresponding Secretary, and Treasurer, as well as any such others as may be appointed by the Chair as described below. Officers must be residents of the Town of Dover and registered as members of the Democratic Party but are not required to be members of the DDC. Any person except the Chair and Vice-Chair may hold multiple offices.

Section 2: Election and Term of Office

The Chair shall be elected by the members of the DDC at the Bi-Annual Convention and shall serve for a term of two years or until the election and qualification of a successor.

The Vice-Chair, Recording Secretary, Corresponding Secretary, and Treasurer shall be appointed by the Chair and serve for a term of two years or until the election and qualification of a successor.

Section 3: Chair

The Chair shall preside at all meetings of the Members and the Executive Board and serve as chief executive officer of the DDC, with such powers as are usually vested in the chairperson, president, or chief executive officer of an organization.

Section 4: Vice-Chair

The Vice-Chair shall assist the Chair in performing the Chair's duties, serve as Acting Chair in the absence of the Chair, and have such other duties and powers as provided elsewhere in these Bylaws or as delegated by the Executive Board or the Chair.

The Vice-Chair need not be of a different sex or gender than the Chair.

Section 5: Recording Secretary

The Recording Secretary shall act as Secretary at all meetings of the DDC and shall record all votes and minutes of all proceedings in the book or books of the DDC Committee kept for that purpose and shall perform the duties usually performed by a Secretary of an association and shall, in addition, be the official depository of all official records of the DDC.

Section 6: Corresponding Secretary

The Corresponding Secretary shall give and serve all notices of meetings and other information to the members of the DDC and shall prepare and forward all correspondence for or on behalf of the DDC and its officers and maintain all correspondence received by the County Committee and its officers.

They shall also be responsible for the maintenance of any website or social media accounts designated by the DDC for the purposes of communicating with members and the general public.

**PAGE | 7**

Section 7: Treasurer

The Treasurer shall maintain or cause to be maintained all financial records of the DDC, including accurate records of all receipts and expenditures, and of all deposits and withdrawals from the DDC's bank and other accounts.

They shall also keep the Chair and Executive Board regularly informed as to the financial status of the DDC and shall be responsible for all financial statements, disclosures, reports, and returns required by law to be filed by or with respect to the DDC.

The Treasurer shall disburse funds of the DDC only upon approval of the committee and shall sign, along with the Chair, all notes, checks, drafts, and other negotiable instruments or orders or other written instruments for the payment or disbursement of money.

## ARTICLE VIII: SELECTION OF CANDIDATES AND OFFICEHOLDERS

Section 1: Purpose

This Article applies to decisions to endorse Democratic candidates for public office running in primary elections (i.e., permitting them to run under the slogan "Morris County Democratic Committee, Inc." and be bracketed on the ballot with other candidates running under this slogan) and to fill vacancies in public office or on general election ballots for which New Jersey law empowers Members to propose candidates or directly fill the vacancy.

The Dover Democratic Committee may endorse Democratic candidates for public office based on their demonstrated alignment with the core values and guiding principles of the Democratic Party. These values include integrity, service to the community, respect for democratic institutions, a commitment to civil rights and social justice, and putting the needs of the people above personal or political ambition.

The DDC shall not be obligated to endorse any candidate solely by virtue of their registration with the Democratic Party or the outcome of a primary election. All endorsements shall be considered on a case-by-case basis and must be approved by a majority vote of the Members present at a duly convened meeting.

The Committee may support an open primary or endorse a candidate who exemplifies these democratic values, regardless of political pressure, ensuring that the Committee

remains faithful to the people and to principles over party machinery.

Any individual who engages in unethical, or unlawful behavior—either in personal conduct or business dealings—that conflicts with the values of the Democratic Party or the standards of integrity upheld by the DDC, shall not be eligible for consideration or invited to address the Committee.

Any candidate found to have a direct affiliation with businesses, organizations, or online platforms that promote or profit from sexually explicit content, escort services, gambling, or any activity deemed inconsistent with the moral, ethical, or legal standard upheld by this organization shall be disqualified from receiving endorsement.

Furthermore, the DDC reserves the right to withhold consideration from any individual whose public or online conduct—such as engaging in or promoting services that are incompatible with the ethical responsibilities of public office—may reasonably undermine public trust or violate the Committee's standards of integrity and respectability expected of candidates.


Section 2: Process

At least two months prior to the filing deadline for each primary election, and as soon as possible after the creation of a vacancy in a Democratic seat within the scope of this Article, the Chair shall appoint, with respect to each public office within the scope of this Article to be voted on in such primary election or with respect to such vacant seat, a Screening Committee consisting of at least three members of the Executive Board. The Screening Committee shall not have more than 5 members total, and those members not representing the Executive Board may be either DDC members or members of the general public. Any member of the general public appointed to serve must be a registered Democrat and a resident of the Town of Dover.  It shall be the job of the Screening Committee to identify and encourage suitable candidates, invite interested persons to apply for consideration, interview and consider candidates, and make recommendations to the Members. Any candidate wishing to be considered by the Members must first apply to the Screening Committee, by submitting a resume and completing any other form of application approved by the Screening Committee or the Executive Board before the deadline set by the Screening Committee.

Section 3: Term of Office

Each individual appointed to the Screening Committee shall serve until the filing deadline for the primary election in question, at which point their term shall expire.

For the avoidance of doubt, a new Screening Committee shall be formed at least two months prior to the filing deadline for every primary election in which candidates need to be nominated.

Section 4: Meetings

At any Member meeting to consider an endorsement or fill a vacancy, each candidate considered by the Screening Committee shall have five minutes to address the Members. Floor nominations shall not be permitted. After each candidate has addressed the Members, the candidates shall leave the meeting, provided that a candidate who is also a Member shall be permitted to return to the meeting for the purpose of voting. Once the candidates leave the meeting, a representative of the Screening Committee shall report to the Members on its recommendation (if any).

Section 5: Voting

Following the report of the Screening Committee, the Members shall proceed to vote by secret ballot. Each Member shall have one vote for each position being considered, provided that the Chair or the Executive Board may permit ranked-choice voting as provided in this Section.

Under the supervision of the Chair and Vice-Chair, the Recording Secretary shall count the ballots or cause them to be counted and announce the results. A successful candidate must receive a majority of the votes (first-choice votes, in the case of ranked-choice voting) cast for the position such candidate is seeking.

If no candidate receives a majority of the votes cast, the lowest vote-getter shall be eliminated and the Members shall proceed to a second ballot or, in the case of a ranked-choice vote, the second choice of Members whose first choice candidate was eliminated shall be counted as though they were first-choice votes. The process shall be repeated until the requisite number of candidates has obtained a majority of the votes cast (first-choice votes or votes counted among first-choice votes, in the case of ranked-choice voting), provided that, in the event of a two-way tie, the County Chair shall vote to break the tie.

**PAGE | 10**

Notwithstanding the foregoing, if the number of candidates does not exceed the number of positions to be filled, at any time after each candidate has addressed the Members, a motion to select the candidate or candidates by acclamation shall be in order and adoption of such motion shall eliminate the need to comply with the balloting and voting requirements of this Section.

In the event an incumbent officeholder seeking the endorsement of the DDC is not recommended by the Screening Committee, the threshold to endorse an alternate candidate shall be increased to two-thirds (⅔) of the Members present. Failure to reach this threshold shall result in a secondary vote to endorse the incumbent officeholder, requiring the approval of a majority of the Members present. Failure to reach this threshold shall result in no endorsement for the relevant office being awarded and the triggering of Section 6.

For the avoidance of doubt, the Executive Board may supplement these rules from time to time, such as by extending the hours of voting beyond the timeframe for the relevant physical, electronic, or telephonic meeting.

Section 6: Failure to Endorse

If the Members fail to endorse any primary election candidate for a particular public office for any reason, or endorses fewer than the number that voters may choose (e.g. if there are two DDC seats up for election in a district but the Members only endorse one candidate), the County Chair may unilaterally cause MCDC to endorse a candidate for such office.

**ARTICLE IX: STANDING COMMITTEES**

The DDC shall establish the following standing committees:

1. Executive Committee
   The Executive Committee shall consist of the officers as specified in Article VII.

   The Executive Committee shall supervise the affairs of the DDC and act for and carry out the established policies of the DDC and shall have and may exercise all the powers of the Dover Democratic Committee between meetings thereof, and report to the DDC at each meeting thereof.

   There shall be at least two (2) days notice of such meetings unless waived by all members of the Executive Committee. Special meetings of the Executive Committee may be called at any time by the Chair of the DDC or by any three of its members either

**PAGE | 11**

personally, by mail, email, or text message. Three members of the Executive Committee shall constitute a quorum.

2. Policy Committee

The Policy Committee shall consist of the officers of the DDC, the members of the Democratic Party resident in Dover, elected to public office in the Town, County, or State, and other party leaders from time to time designated by the Chair of the DDC.

The Chair of the DDC shall be the presiding officer at such meetings.

The Policy Committee shall function as a policy consideration committee making recommendations of Democratic policy to the DDC and the elected officials in the Town of Dover.

3. Ad hoc Committees

The Chair, and/or the DDC may occasionally establish such ad hoc committees as it may determine are necessary and appropriate to the purposes of the Dover Democratic Committee. Such committees shall possess and exercise such powers and authority as the Chair and/or DDC shall specify in the resolution appointing them or otherwise.

Appointed members of the committees need not be elected members of the DDC but must be registered Democrats and residents of the Town of Dover.

## SECTION X: AMENDMENTS

These Bylaws may be amended or restated on the recommendation of the Executive Board and with the affirmative vote of at least two-thirds (⅔) of the Members present and voting at any duly convened meeting of the Members.

# EXHIBIT C



December 16, 2025

CC: Annamarie Amaya, Antonio Acosta, Arturo Santana, Cassandra Quintero, Claudia Toro, Connie Acosta, Elva Derodriguez, Fernando Barrios, Guadalupe Barrios, James Dodd, James Visioli, Jesus Torres, Julia Amaya, Mafer Orrala, Maria Borda, Maria Solines, Maureen Mcgrath, Michael Scarneo, Michelle Espada, Thomas Hubert, Thomas Incera, Thomas Macdonald, Victoria Pinales-Diaz, Washington Pro

Re: Request for Resignation from the Dover Town Democratic Municipal Committee and the Morris County Democratic Committee due to violations of Morris County Democratic Committee Bylaws

To Dover Town Municipal Democratic Committee Members and Chairwoman Solines,

The Morris County Democratic Committee Executive Board is responsible for ensuring that members of municipal committees perform their duties with sound judgment, responsible conduct, and consistent participation in a manner that supports the MCDC's mission to elect Democrats and maintain public trust in our policies, processes, and organization.

Pursuant to Article II, Section 4 of the Morris County Democratic Committee (MCDC) Bylaws, following a review of your conduct during the 2025 election, the Executive Board has determined that your actions constitute a detrimental, material breach of these obligations under our bylaws.

**Therefore, you are hereby asked to submit your resignation from the Dover Town Municipal Democratic Committee, effective immediately**, and to not seek reinstatement or reelection prior to June 2027.

This request is made in the interest of maintaining organizational coherence, to protect the integrity of both the Dover and Morris County Democratic Committees, and to ensure compliance with the bylaws and governance standards of the MCDC.

Further, given the committee's violation of these obligations, we also request that Chairwoman Maria Solines resign, effective immediately, and that she not seek reinstatement or reelection prior to June 2027.

## Basis for Resignation Request

The Executive Board requests this action based on evidence that **you knowingly supported and promoted candidates opposing the officially endorsed Democratic nominees** in violation of your obligations as a Member under Article I, Section 2 of the MCDC Bylaws. Per Article I, Section 2, the purposes of MCDC are:

- To serve as the county committee, as described in N.J.S.A. 19:5-3, of the Democratic Party in and for the County of Morris, State of New Jersey;

- To provide the voters of Morris County with Democratic candidates for election to public office;



- To campaign for Democratic candidates and with respect to issues of importance to Democratic voters;

- To assist Democratic elected officials representing Morris County residents in the performance of their duties;

- To encourage an interest in politics and public affairs in Morris County;

- To provide a forum for the discussion and exchange of ideas on political issues;

- To support the work of the municipal committees of the Democratic Party in Morris County.

However, during the 2025 general election cycle, Chairwoman Solines and the Dover Town Democratic Committee Members:

- Publicly supported and advocated for Republican candidate **Jack Ciattarelli** instead of supporting **Mikie Sherrill**, the endorsed Democratic gubernatorial candidate.

- Promoted write-in candidate **Claudia Toro** instead of supporting **Daniella Mendez**, the MCDC endorsed Democratic Dover Ward 1 candidate.

- Promoted write-in candidate **Ismael Orama** instead of supporting **Judy Rugg**, the MCDC endorsed Democratic Dover Ward 2 candidate.

- Promoted **Republican** candidate **Maria Rosario** instead of supporting **Christopher Almada**, the MCDC endorsed Dover Ward 3 Democratic candidate.

- Promoted Republican LD25 candidate **Christian Barranco** instead of supporting **Marisa Sweeney** and **Steve Pylypchuk**, the MCDC endorsed LD25 Democratic candidates.

- Created and distributed materials with offensive, intimidating, and demeaning language targeting **Daniella Mendez**, the MCDC endorsed Democratic Dover Ward 1 candidate, in violation of the MCDC Anti-Harassment Policy.

- Created and broadcast statements with offensive, intimidating, and demeaning language targeting **Daniella Mendez**, the MCDC endorsed Democratic Dover Ward 1 candidate, in violation of the MCDC Anti-Harassment Policy.

These actions constitute:

- **Failure to comply with MCDC Bylaws, Rules, and policies**, including expectations regarding support for **endorsed Democratic candidates** (Article II, Section 4).

- **Conduct detrimental to MCDC and its Municipal Committees**, as described in Article II, Section 4 and the MCDC Anti-Harrassment Policy.

- **Activity inconsistent with your duties as a Member** under Article II, Section 1, which requires Members to support the Democratic Party's mission and efforts.



**These actions fall within the categories of behavior for which removal can be recommended under Article II, Section 4.**

**Next Steps**

Should members choose to honor this request, you may fill out the **attached notice of resignation** and email it to secretary@morrisdems.org and director@morrisdems.org **no later than 5:00pm December 22, 2025**. It will then be submitted by MCDC to the County Clerk's office on your behalf.

Please be aware if a member seeks to remain on the committee, pursuant to both Article II, Section 4 and Article VI, Section 3 of the Morris County Democratic Committee Bylaws, the Executive Board will pursue a full Morris County Democratic Committee member vote during a special convention in January 2026 to remove Chairwoman Solines and all current members of the Dover Town Municipal Democratic Committee. **We are confident we will be successful in this vote and your removal.**

If you wish to contest your removal, you must email secretary@morrisdems.org and director@morrisdems.org  your intent to present a defense no later than **5:00pm December 22, 2025**. The MCDC Executive Director will reach out to schedule your appearance in January.

- You have the right to notice and an opportunity to be heard by the Executive Board before any vote is taken.

- You have the right to speak, present documents, and respond to the allegations.

- You may have a representative accompany you if you wish.

- **If you do not respond to this notice with an intent to contest your removal, you waive your option to appear before the Executive Board prior to the removal vote.**

Thank you for your prompt attention to this matter,

The Morris County Democratic Committee Executive Board

Darcy Draeger, Chair

Michael Delamater, Vice Chair

Margaret Cappodano, Secretary

Steve Pypylchuck, Treasurer

Meghan Lynch, Co-Chair Fundraising

Benjamin Weisman, Co-Chair Fundraising

Matt Clarkin, Operations Chair

Cara Parmigiani, Innovation Chair

Amalia Duarte, Grassroots Chair

Jason Navarino, Parliamentarian

# EXHIBIT D

# Morris County Democratic Committee Anti-Harassment Policy

*The language for this policy was based on the model policy provided by the NJ Coalition Against Sexual Assault.*

We, the Morris County Democratic Committee (MCDC), are committed to creating a respectful and safe working environment for every individual who works or volunteers with or for MCDC, including campaign staff, independent contractors, volunteers, vendors, consultants, fundraisers, interns, and candidates ("Campaign Workers").

MCDC does not tolerate harassment, bullying, or discrimination of any kind, in the workplace or in work-related situations. To achieve an environment that is free of harassment, bullying, and discrimination, it is essential that all workers and volunteers feel comfortable raising complaints about harassment or other misconduct when they see or experience it. This Policy covers prohibited conduct, including behaviors that may or may not be legally actionable as "harassment," and covers individuals who may not have legal protections in all jurisdictions but who are at high risk of being targeted for harassment. MCDC further strictly prohibits any form of retaliation against anyone who reports or assists in reporting a concern regarding a violation of this Policy.

Recognizing that it may take months or even years for victims of harassment, sexual assault, or discrimination to come forward, this Policy will apply retroactively in serious cases.

## I.    Who Is Covered

This Policy applies to all individuals working or volunteering with or for MCDC. This includes municipal Democratic committees, Democratic campaigns within Morris County, and any other organizations or campaigns that fall under the oversight of or are coordinated with MCDC. It includes but is not limited to candidates, campaign staff, independent contractors, volunteers, vendors, consultants, and fundraisers. Each individual to whom it applies is responsible for following and upholding this Policy. MCDC is committed to protecting its workers and volunteers against all harassment, discrimination, and bullying, regardless of the source. Therefore, workers and volunteers should report all instances of harassment, discrimination, or bullying, even if committed by those to whom the policy does not expressly apply.

> EXAMPLE
> Nick is a field coordinator in Parsippany for a countywide campaign. As part of his job, he frequently invites volunteers to meet one-on-one to discuss campaign matters. In response to Nick's invitation for a working coffee meeting, a volunteer asked to move the mid-day coffee meeting to a dinnertime date followed by watching Netflix at his apartment. Nick declined, explaining that he wanted to keep the meeting strictly professional. The volunteer jokingly responded that he was a committed volunteer and so Nick should agree to the date for the good of the campaign. He has continued to text Nick with invitations to go on dates under the pretenses of campaign work. Nick should report this behavior to the designated reporting contact.

Managers, supervisors, and any other individuals with supervisory authority must report suspected violations of this Policy when they become aware of such a violation. Managers and supervisors may become aware of a violation when they are explicitly told about the violation, when they hear about a violation indirectly, or when they witness a violation. In each scenario, the manager or supervisor must bring the suspected violation to the designated reporting contact.

## II.    Application of the Policy

The Policy applies to any interactions involving covered individuals, regardless of whether the conduct occurs in the office, in the field, at work-related social events, at fundraising events, at parties, or elsewhere. This Policy also applies to electronic transmissions, such as email and text messages, as well as postings on social media.

> EXAMPLE
> After a day of get-out-the-vote efforts, two volunteers, Angela and Trevor, go out to a bar. After several drinks, Trevor rubs Angela's thigh and tells her that he is attracted to women of color like her because they "know what they are working with." The next morning, Angela tells Trevor she was uncomfortable with his comments, and he explains that he was "joking" and that he was too drunk. They go out for drinks again, and Trevor repeats the same behavior. Trevor is engaging in harassing behavior. It does not matter that they are volunteers, or that the behavior is happening outside of working hours; it is still covered by the Policy. The behavior is also not excused because Trevor is "joking" or under the influence.

## III.    Prohibition Against Harassment

This Policy prohibits harassment. For the purposes of this Policy, harassment is conduct that creates a disrespectful, intimidating, hostile, degrading, humiliating, or offensive environment for a covered individual based on that individual's protected status. Under the New Jersey Law Against Discrimination (N.J.S.A. 10:5-1 et seq) "Protected status" includes the following: race; religion or religious creed; color; ethnic or national origin; nationality; age; ancestry; sex, including pregnancy, childbirth, and breastfeeding, or related medical conditions; sexual orientation; gender; gender identity or expression; marital status; domestic partnership status; civil union status; familial status; physical or mental disability; atypical cellular or blood trait; genetic information or characteristics (or those of a family member); and military or veteran status. This policy also covers immigration status; citizenship status; and status of a victim of domestic violence, stalking, or sexual assault.

> EXAMPLE
> Jacinda was a volunteer with a county campaign. For months, Bill, another volunteer, made comments about Jacinda's body, told people he was dating Jacinda, encouraged her to drink even though she was underage, and tried to create situations in which the two would be alone. Jacinda told Amelia, her supervisor within the campaign, about Bill's behavior, and Amelia told Jacinda that Bill was just "joking" and that's just "how he is." Bill harassed Jacinda in violation of this Policy, and Amelia also violated the Policy by condoning his conduct and not reporting the misconduct for investigation.

For the purposes of this Policy, sexual harassment is any harassment specifically based on sex that would make a reasonable and similarly situated person feel offended, demeaned, or uncomfortable. To be clear, this Policy prohibits harassment based on sex, even if it does not rise to the level of illegality under state and federal law. Note that sexual harassment can happen regardless of gender, gender identity, gender expression, and/or sexual orientation. This means that sexual harassment can occur between same-sex individuals as well as individuals of different sexes. Sexual harassment need not be motivated by sexual desire.

While not an exhaustive list, harassment can include the following types of conduct:
- Derogatory or insensitive jokes, comments, or pranks;
- Sharing the derogatory or insensitive jokes, comments, or pranks of others;
- Use of slurs or epithets;
- Inappropriate familiarity, invasive questions about personal lives or relationships;
- Intentionally misgendering an individual;
- Refusing to refer to an individual by their chosen name and/or pronouns;
- Unwelcome sexual or romantic advances or invitations (including asking an individual out more than once if the individual declines the first invitation);
- Displaying or sharing images such as posters, videos, photos, cartoons, screensavers, emails, or drawings that are derogatory or sexual;
- Comments about appearance or other personal or physical characteristics, such as sexually charged comments or comments on someone's physical disability;
- Unwanted bodily contact such as groping or massaging, blocking normal movement, unnecessary touching, or physically interfering with the work of another individual.

### IV.    Prohibition Against Bullying

This Policy prohibits bullying. Bullying is repeated behavior that a reasonable covered individual would find disrespectful, intimidating, hostile, degrading, humiliating, or offensive, regardless of whether the conduct is based on an individual's protected status.

While this is not an exhaustive list, bullying behavior can appear as the following:
- Excessive monitoring or micromanaging;
- Deliberately excluding a covered individual or isolating them from activities that they would normally be included in;
- Singling out a covered individual for unfavorable work assignments or demands;
- Regularly teasing or making a covered individual the subject of pranks or practical jokes; or
- Publicly reprimanding, embarrassing, or shouting at a covered individual.

EXAMPLE
A campaign staffer named Penelope helped the candidate, Carla, prepare for a candidate forum. When the forum did not go well, the campaign manager, Kristen, blamed Penelope in front of the entire campaign staff and multiple volunteers, including yelling at Penelope on the day of the appearance and then repeatedly raising the incident and berating Penelope for the problems. Kristen then excluded Penelope and assigned her menial and time-consuming tasks instead of the strategic projects she had been working on. Kristen is bullying Penelope. While it is appropriate for supervisors to provide feedback and address performance issues, Kristen's actions went beyond her supervisory authority over Penelope.

## V.    Prohibition Against Discrimination

This Policy prohibits discrimination. For the purposes of this Policy, discrimination occurs when a Campaign Worker is treated differently than their peers based on their protected status as enumerated above in Section III.

Discriminatory behavior can appear as the following, though this list is not exhaustive:
- Adopting policies that disproportionately affect individuals of a certain protected status;
- Assigning responsibilities based on an individual's protected status;
- Sharing or displaying hate symbols such as nooses and cross burning; or
- Excluding certain individuals from work-related events or opportunities based on their protected status.

EXAMPLE
Sean is a white field organizer for a state senate race. When deciding which volunteers should knock on doors for the candidate in a predominately white neighborhood, Sean says that only white volunteers should be sent to the neighborhood because they are the only ones who can really talk with the voters there. When a volunteer who is Black says that he grew up in the neighborhood and volunteers to knock on doors there, Sean refuses to believe that he will be able to connect with the voters in that neighborhood. Sean's behavior is discriminatory, and the volunteers should report his behavior

## VI.    Role of Bystanders

Bystanders should speak up if they see or hear something that they believe violates the Policy or something that they think is inappropriate, including suspected instances of retaliation. Bystanders are encouraged to intervene on the spot when they see inappropriate behavior unless doing so would risk the bystander's physical safety. Bystanders should protect the vulnerable against predatory or improper behavior. If bystanders do not believe that they can safely intervene – for example, if the offender is threatening violence – bystanders are expected to call law enforcement.

MCDC also encourages bystanders to engage with the victim to see if they would like to report the violation or would like assistance in reporting. As mentioned before, managers, supervisors, and any other individuals with supervisory authority must report suspected violations of this Policy

> EXAMPLE
> Samuel was a municipal chair. A member of the county executive board, Sasha, began making unwanted advances and asking overly personal questions about Samuel's love life. Samuel told a fellow municipal chair named Ellen about the unwanted advances, and Ellen encouraged Samuel to report the misconduct. Shortly after Samuel reported Sasha, Ellen observed Sasha purposely excluding Samuel from the types of planning meetings and emails that he would normally be included on. Ellen forwarded the relevant emails to Samuel, and later told Sasha in a one-on-one meeting that she should be sure to keep Samuel in the loop on county issues. Sasha was retaliating against Samuel for complaining about her, and Ellen effectively intervened as a bystander.

when they become aware of such a violation.

Examples of successful intervention by a bystander can include telling the perpetrator that their behavior is inappropriate, or approaching them later and asking a non-confrontational question about an inappropriate comment, such as saying, "Were you aware of how you came off in that conversation?" If bystanders do not feel comfortable addressing the behavior directly with the perpetrator, then bystanders should feel empowered to report the misconduct or encourage the victim to report the misconduct.

MCDC also commits to providing covered individuals with the training and education necessary to be effective bystanders. MCDC will provide training on bystander intervention annually, and will integrate bystander intervention principles into other relevant trainings.

### VII.    Prohibition Against Retaliation

MCDC strictly prohibits any form of retaliation against a campaign worker who reports or assists in reporting a concern regarding a violation of this Policy. Retaliation against a campaign worker is a violation of this Policy and the retaliating individual will be subject to discipline under this Policy.

Retaliation occurs when a campaign worker experiences a negative change in their working conditions because they reported what they believed in good faith to be harassment or a violation of this Policy; expressed an intent to report what they believed in good faith to be harassment or a violation of this Policy; assisted another individual in an effort to report harassment or a violation of the Policy; or participated in any investigation under this Policy.

This is not an exhaustive list, but retaliation can include the following types of conduct:

- Termination or demotion;
- Intimidation or excessive discipline;
- Social exclusion or isolation;
- Blacklisting;

- Unfavorable work assignments or reduction in responsibilities; or
- Denial of advancement.

MCDC may need to employ protective measures for the benefit of the complainant while the report is investigated. MCDC pledges that any protective measures that are undertaken will not penalize the complainant. MCDC will perform regular check-ins with the complainant while the investigation is ongoing to ensure no retaliation is happening.

### VIII.    Procedures for Reporting a Violation of the Policy

If you suspect harassment, bullying, discrimination, or retaliation has occurred, you are encouraged (and supervisors are required) to promptly provide a written or oral complaint internally to a member of the MCDC Executive Board or, in a case in which you are concerned about confidentiality, to a fellow MCDC member you entrust to carry your complaint to the MCDC Executive Board for you.

There are two processes for reporting harassment within MCDC: an informal complaint resolution process and a formal harassment complaint process. If legislation sponsored by Senators Vin Gopal and Loretta Weinberg is enacted, an independent process for reporting and investigating harassment, sexual assault, and discrimination in campaigns through a non-partisan, non-political entity will be created that will give victims a third avenue entirely outside the regular political party structure.

1. *Informal complaint resolution process*
   a. The Informal Resolution Process is, as the name suggests, flexible and intentionally open to individualized response and resources. This will be a confidential process, and the parties' names, the process itself, and any resolution will not be subject to disclosure to any party. The Informal Resolution Process is intended to stop and redirect behavior before it reaches the level of unlawful harassment and to prevent it from reoccurring.
   b. The informal process for managing complaints is to be used:
      i. At the discretion and expressed wish of the covered individual who experienced harassing or discriminatory behavior;
      ii. When the harassment or discrimination does not constitute an imminent safety threat; and/or
      iii. When the covered individual who is experiencing harassment or discrimination wants the behavior to stop without severe ramifications (such as termination) for the person committing the harassment.
   c. The informal process is to be handled by MCDC with the goal of completing the process within thirty (30) days. During the informal process, MCDC will offer practical remedial and protective accommodations for both the complainant and the respondent.
   d. At any time during the process, the complainant may choose to initiate the formal complaint process, as described in section (2) below. Statements made by a complainant or respondent during the informal process will not be used against that person in a complaint or investigation under the formal process.

     *e.* The investigator will take such steps as necessary to understand the complaint and find facts to determine if the behavior occurred. These steps need not follow the formal investigation protocols set forth below. After the informal fact finding has concluded, the investigator will determine a range of resources to offer to the parties to resolve the issues.

     *f.* Outcomes from the informal complaint process may include:

          *i.* Expertly facilitated alternative justice sessions;

          *ii.* Meetings between the investigator and respondents on behalf of complainants;

          *iii.* Training and educational opportunities;

          *iv.* Referrals to counseling, advocacy, and wellness support; or

          *v.* Other remedial actions deemed appropriate, at the discretion of the investigator.

     *g.* The investigator will create a record of all complaints handled under the Informal Resolution Process and the outcome and will maintain such records in secure and confidential files. All such records and work product of this process will be confidential.

     *h.* Participation in the Informal Resolution Process will be voluntary. If the parties agree to the Informal Resolution Process, they will be expected to participate fully and in good faith. If a respondent does not agree, or fails to participate fully and in good faith, the investigator will refer the matter to the respondent's supervisor along with the investigator's summary of the material facts. The supervisor may subject the respondent to disciplinary action for the alleged behavior as ordinarily determined by the supervisor of the agency. In all cases of non-participation, the investigator will document the allegations and responses in the complaint file, and this information may be considered as grounds for immediate referral to the Formal Resolution Process or for more serious treatment of future complaints about the same respondent, should they arise.

  2. *Formal complaint resolution process*

     *a.* The Formal Resolution Process is a more traditional investigative response to certain complaints, including all complaints alleging facts that could constitute discrimination, harassment, or retaliation. This will be a confidential process, and the parties' names, witness names, the process itself and any resolution will not be subject to disclosure to any party, except as provided herein. The Formal Resolution Process is intended to address serious misbehavior and prevent it from reoccurring.

     *b.* The formal complaint investigation will only be initiated with the approval of the complainant unless the campaign or organization determines that actions alleged constitute an immediate threat to the safety of the campaign or organization workplace.

          *i.* If the formal complaint process proceeds without the consent of the initial complainant, the identity of the complainant will not be disclosed during the process and it will be considered retaliation if the complainant's identity is disclosed, unless otherwise permitted by law.

     *c.* The formal complaint process can be conducted by:

          *i.* Trauma-informed interviewers and data assessors;

  *ii.* An Equal Employment Opportunity Officer with substantial experience in Equal Employment Opportunity matters, investigations, data analysis, and reporting; or

  *iii.* Qualified third-party investigators.

*d.* Prior to meeting with the respondent, the investigator will inform the respondent of the general nature of the allegations but will not provide the respondent with a copy of any complaint.

*e.* The investigator will orally inform both the complainant and the respondent of the following and offer the information in writing, but will not send the information to the party, except through a private email account designated by the individual that is not accessible by aides, interns, or other staff:

  *i.* The process, including a timeline; MCDC should endeavor to close an investigation and issue a final determination within sixty (60) days;

  *ii.* The party's rights and responsibilities, including the requirement or importance of maintaining confidentiality;

  *iii.* The prohibition on retaliation and the consequences, including that disclosing the identity of a party or witness may be considered retaliation unless the identity of that party or witness has previously been disclosed by others; and

  *iv.* The resources available to the party.

*f.* The campaign or organization will offer practical remedial and protective accommodation measures to both the complainant and the respondent.

*g.* An anti-retaliation plan will be offered to each party and to any witness(es) and will only disclose to others, such as leadership or the state patrol, the information necessary to implement the anti-retaliation plan.

*h.* Factual finding in an investigation will be made based on a preponderance of the evidence. A finding of a violation of the policy will require both a finding that the complainant subjectively found the actions to be offensive and an objective finding that a reasonable person in the complainant's position would have found the actions to be offensive.

*i.* The investigator will make a record of all complaints handled under the Formal Resolution Process and the outcome and will maintain such records in secure and confidential files. All such records and work product of this process will be confidential.

*j.* Participation in the Formal Resolution Process is mandatory for covered individuals. Parties will participate fully and in good faith. A failure to participate could subject a party to further disciplinary action.

*k.* Individuals are entitled to a support person. If an individual becomes a participant in the Formal Resolution Process, they may be accompanied to any proceedings in the process with the support person of their choice, with the following limited exceptions:

  *i.* The support person will be allowed to be present at proceedings to assist by taking notes, organizing documentation, or providing emotional support and reassurance.

  *ii.* The support person may consult with the individual during the Formal Resolution Process in a way that does not disrupt or delay any proceeding,

except during interviews when the role of the support person is that of silent non-participant.

*iii.* The support person may not be a witness in the matter, present information or evidence on behalf of the participant, attend any proceedings in lieu of the individual, or otherwise actively participate in any proceeding.

*iv.* Support persons who act in a manner contrary to these requirements or otherwise disrupt any proceeding in the Formal Resolution Process may be excluded from that proceeding and/or future proceedings.

*v.* Support persons are bound by complete confidentiality and may not disclose any information they become aware of in their role as a support person.

## IX.    Confidentiality

MCDC recognizes and respects the covered individual's right to privacy and the need for confidentiality and autonomy. MCDC will maintain the confidentiality of a covered individual's disclosure regarding harassment or discrimination to the extent allowed by law, and unless to do so would result in the threat of physical harm to any person and/or jeopardize safety within the workplace. When information must be disclosed to protect the safety of individuals, MCDC will limit the breadth and content of such disclosure to information reasonably necessary to protect the safety of the disclosing covered individual and others, and to comply with the law. To the extent possible, MCDC will provide advance notice to the individual who disclosed information if the disclosure must be shared with other parties in order to maintain safety. MCDC will also provide the individual with the name and title of the person to whom MCDC intends to share the individual's statements and will explain the necessity and purpose regarding said disclosure. This statement should not be construed to require any covered individual to sign and adhere to non-disclosure agreements (NDAs), nor do the mandates of confidentiality laid out in this policy prohibit any campaign worker from speaking freely about discrimination, harassment, or intimidation that they experienced while working on the campaign.

## X.    Possible Outcomes from Violations

MCDC is committed to investigations that have just and fair outcomes. If an investigation reveals that a violation of this Policy occurred, the offender will be disciplined, but the punishment will be proportional to the violation, with repeat offenses receiving increasing discipline. MCDC will prepare and publish a matrix of the possible outcomes that will be imposed based on a range of behaviors and repeat offenses up to and including denial of campaign funds, denial of endorsement for elected or party office, and denial of the right to run under the party organization line.

## XI.    Appeals

MCDC will develop an appeals process that can be used by a party involved in the reported incident who does not agree with its resolution.

**XII.     Distribution of this Policy**

This Policy will be:

1) Discussed and signed onto by all covered individuals;
2) Posted in all physical MCDC locations;
3) Available on the MCDC website; and
4) Distributed via internal communications, e-mail communications, listservs, or Slack channels.

# EXHIBIT E



**MORRIS**
**COUNTY**
**DEMOCRATIC**
**COMMITTEE**

**Ann Grossi, Esq.**

**Morris County Clerk's Office - Hall of Records Admin Building**
**10 Court Street P O Box 315, Morristown, NJ 07963-0315**

_____
*DATE*

## Certificate of Resignation
*(as a County Committee Person)*

**Re:** Resignation of _____ who was elected to the

*COMMITTEE PERSON'S NAME*

**DEMOCRATIC** County
Committee in                                              _____ .

*MUNICIPALITY, WARD, DISTRICT*

*SIGNATURE - COMMITTEE PERSON*

_____

*PRINTED NAME - COMMITTEE PERSON*

_____

Dear Ann Grossi, Esq.,

I have been notified by the Committee Person listed above of their intent to resign their position as an elected member of our Party's County Committee.

Please accept this letter as notice to remove their name from the official list of County Committee Members.

Sincerely,

_____

*SIGNATURE - MUNICIPAL/ COUNTY CHAIR*

_____

*PRINTED NAME - MUNICIPAL/ COUNTY CHAIR*

**THIS NOTICE SHOULD BE EMAILED TO:**
- morriscountyclerkelections@co.morris.nj.us & **lroberts@co.morris.nj.us**
  - **CC: director@morrisdems.org**

Morris County Democratic Committee, P.O Box 306, Morristown, NJ 07960-0306.

# EXHIBIT F

| Election Results for Dover Removal | | | | |
|---|---|---|---|---|
| | | | | |
| Remove Antonio Acosta | | | | |
| ****************************** | | | | |
| | | | | |
| Option | Votes | Percentage | | |
| Yes | 450 | 96.15% | | |
| No | 18 | 3.85% | | |
| | | | | |
| Votes tallied: 468 | | | | |
| Abstentions: 20 | | | | |
| | | | | |
| | | | | |
| Remove Connie Acosta | | | | |
| ****************************** | | | | |
| | | | | |
| Option | Votes | Percentage | | |
| Yes | 452 | 96.17% | | |
| No | 18 | 3.83% | | |
| | | | | |
| Votes tallied: 470 | | | | |
| Abstentions: 18 | | | | |
| | | | | |
| | | | | |
| Remove Annamarie Amaya | | | | |
| ****************************** | | | | |
| | | | | |
| Option | Votes | Percentage | | |
| Yes | 453 | 96.18% | | |
| No | 18 | 3.82% | | |
| | | | | |
| Votes tallied: 471 | | | | |
| Abstentions: 17 | | | | |
| | | | | |
| | | | | |
| Remove Julia Amaya | | | | |
| ****************************** | | | | |
| | | | | |
| Option | Votes | Percentage | | |
| Yes | 455 | 96.81% | | |
| No | 15 | 3.19% | | |
| | | | | |
| Votes tallied: 470 | | | | |
| Abstentions: 18 | | | | |
| | | | | |

1

**Remove Fernando Barrios**
*********************************

| Option | Votes | Percentage | | |
|--------|-------|------------|---|---|
| Yes | 459 | 97.25% | | |
| No | 13 | 2.75% | | |
| | | | | |
| Votes tallied: 472 | | | | |
| Abstentions: 16 | | | | |

**Remove Guadalupe Barrios**
*********************************

| Option | Votes | Percentage | | |
|--------|-------|------------|---|---|
| Yes | 459 | 97.25% | | |
| No | 13 | 2.75% | | |
| | | | | |
| Votes tallied: 472 | | | | |
| Abstentions: 16 | | | | |

**Remove Maria Borda**
****************************

| Option | Votes | Percentage | | |
|--------|-------|------------|---|---|
| Yes | 456 | 96.82% | | |
| No | 15 | 3.18% | | |
| | | | | |
| Votes tallied: 471 | | | | |
| Abstentions: 17 | | | | |

**Remove Elva De Rodriguez**
*********************************

| Option | Votes | Percentage | | |
|--------|-------|------------|---|---|
| Yes | 461 | 97.67% | | |
| No | 11 | 2.33% | | |
| | | | | |
| Votes tallied: 472 | | | | |
| Abstentions: 16 | | | | |

2

| Remove James Dodd | | | | |
|---|---|---|---|---|
| ************************** | | | | |
| | | | | |
| Option | Votes | Percentage | | |
| Yes | 467 | 97.70% | | |
| No | 11 | 2.30% | | |
| | | | | |
| Votes tallied: 478 | | | | |
| Abstentions: 10 | | | | |
| | | | | |
| | | | | |
| Remove Michelle Espada | | | | |
| ****************************** | | | | |
| | | | | |
| Option | Votes | Percentage | | |
| Yes | 462 | 97.47% | | |
| No | 12 | 2.53% | | |
| | | | | |
| Votes tallied: 474 | | | | |
| Abstentions: 14 | | | | |
| | | | | |
| | | | | |
| Remove Thomas Hubert | | | | |
| **************************** | | | | |
| | | | | |
| Option | Votes | Percentage | | |
| Yes | 456 | 96.82% | | |
| No | 15 | 3.18% | | |
| | | | | |
| Votes tallied: 471 | | | | |
| Abstentions: 17 | | | | |
| | | | | |
| | | | | |
| Remove Thomas Incera | | | | |
| **************************** | | | | |
| | | | | |
| Option | Votes | Percentage | | |
| Yes | 454 | 96.80% | | |
| No | 15 | 3.20% | | |
| | | | | |
| Votes tallied: 469 | | | | |
| Abstentions: 19 | | | | |
| | | | | |
| | | | | |
| Remove Thomas Macdonald | | | | |

3

******************************

| Option | Votes | Percentage | | |
|--------|-------|-----------|---|---|
| Yes | 458 | 97.45% | | |
| No | 12 | 2.55% | | |
| | | | | |
| Votes tallied: 470 | | | | |
| Abstentions: 18 | | | | |
| | | | | |
| | | | | |
| Remove Maureen Mcgrath | | | | |

******************************

| Option | Votes | Percentage | | |
|--------|-------|-----------|---|---|
| Yes | 462 | 97.47% | | |
| No | 12 | 2.53% | | |
| | | | | |
| Votes tallied: 474 | | | | |
| Abstentions: 14 | | | | |
| | | | | |
| | | | | |
| Remove Mafer Orrala | | | | |

****************************

| Option | Votes | Percentage | | |
|--------|-------|-----------|---|---|
| Yes | 455 | 96.81% | | |
| No | 15 | 3.19% | | |
| | | | | |
| Votes tallied: 470 | | | | |
| Abstentions: 18 | | | | |
| | | | | |
| | | | | |
| Remove Victoria Pinales-Diaz | | | | |

*************************************

| Option | Votes | Percentage | | |
|--------|-------|-----------|---|---|
| Yes | 457 | 97.03% | | |
| No | 14 | 2.97% | | |
| | | | | |
| Votes tallied: 471 | | | | |
| Abstentions: 17 | | | | |
| | | | | |
| | | | | |
| Remove Washington Pro | | | | |

******************************

4

| Option | Votes | Percentage | | |
|--------|-------|------------|---|---|
| Yes | 456 | 97.02% | | |
| No | 14 | 2.98% | | |
| | | | | |
| Votes tallied: 470 | | | | |
| Abstentions: 18 | | | | |
| | | | | |
| | | | | |
| Remove Cassandra Quintero | | | | |
| ********************************* | | | | |
| | | | | |
| Option | Votes | Percentage | | |
| Yes | 456 | 97.02% | | |
| No | 14 | 2.98% | | |
| | | | | |
| Votes tallied: 470 | | | | |
| Abstentions: 18 | | | | |
| | | | | |
| | | | | |
| Remove Arturo Santana | | | | |
| ***************************** | | | | |
| | | | | |
| Option | Votes | Percentage | | |
| Yes | 460 | 97.46% | | |
| No | 12 | 2.54% | | |
| | | | | |
| Votes tallied: 472 | | | | |
| Abstentions: 16 | | | | |
| | | | | |
| | | | | |
| Remove Michael Scarneo | | | | |
| ****************************** | | | | |
| | | | | |
| Option | Votes | Percentage | | |
| Yes | 456 | 96.82% | | |
| No | 15 | 3.18% | | |
| | | | | |
| Votes tallied: 471 | | | | |
| Abstentions: 17 | | | | |
| | | | | |
| | | | | |
| Remove Maria Solines | | | | |
| ***************************** | | | | |
| | | | | |

| Option | Votes | Percentage | | |
|--------|-------|------------|--|--|
| Yes | 463 | 97.47% | | |
| No | 12 | 2.53% | | |
| | | | | |
| Votes tallied: 475 | | | | |
| Abstentions: 13 | | | | |
| | | | | |
| | | | | |
| Remove Claudia Toro | | | | |
| *************************** | | | | |
| | | | | |
| Option | Votes | Percentage | | |
| Yes | 463 | 97.68% | | |
| No | 11 | 2.32% | | |
| | | | | |
| Votes tallied: 474 | | | | |
| Abstentions: 14 | | | | |
| | | | | |
| | | | | |
| Remove Jesus Torres | | | | |
| **************************** | | | | |
| | | | | |
| Option | Votes | Percentage | | |
| Yes | 457 | 96.82% | | |
| No | 15 | 3.18% | | |
| | | | | |
| Votes tallied: 472 | | | | |
| Abstentions: 16 | | | | |
| | | | | |
| | | | | |
| Remove James Visioli | | | | |
| ***************************** | | | | |
| | | | | |
| Option | Votes | Percentage | | |
| Yes | 459 | 96.84% | | |
| No | 15 | 3.16% | | |
| | | | | |
| Votes tallied: 474 | | | | |
| Abstentions: 14 | | | | |

| Dover Removal | | | |
|---|---|---|---|
| | | | |
| | | | |
| | Confirmation Code | Submitted | Notes |
| 1 | 27e4fc4772af3a7 | March 17, 2026 6:59 PM | |
| 2 | b57a0ff4025532a | March 19, 2026 5:02 PM | |
| 3 | 1b3ec1d31cef7e3 | March 19, 2026 10:24 AM | |
| 4 | e033c3ebee8e404 | March 19, 2026 10:36 AM | |
| 5 | 3e78653a44e1fc7 | March 17, 2026 7:53 PM | |
| 6 | 3f5933e3bc62a04 | March 18, 2026 11:13 PM | |
| 7 | 2acef7686981640 | March 17, 2026 7:18 PM | |
| 8 | 58f920279aded8d | March 17, 2026 10:52 PM | |
| 9 | 4ab7da4518287ce | March 18, 2026 4:02 PM | |
| 10 | 83a7e765d8dedd8 | March 17, 2026 6:33 PM | |
| 11 | 941120870517c3e | March 18, 2026 12:41 PM | |
| 12 | d21a6013dae10a7 | March 17, 2026 8:01 PM | |
| 13 | bf4f70b654838d9 | March 17, 2026 6:36 PM | |
| 14 | 0f5030e93c2a36a | March 18, 2026 4:41 PM | |
| 15 | 4ccb0cca9910e71 | March 17, 2026 6:52 PM | |
| 16 | 5530189bf04ccf9 | March 18, 2026 9:18 AM | |
| 17 | 6fe79a94d8ef8de | March 18, 2026 10:10 PM | |
| 18 | 4d4460505f1d9cd | March 17, 2026 9:13 PM | |
| 19 | 952d09adf283727 | March 17, 2026 7:20 PM | |
| 20 | 528af6f56940327 | March 17, 2026 9:33 PM | |
| 21 | 2c8625f13939f7c | March 18, 2026 2:01 PM | |
| 22 | 41216065193dc3a | March 18, 2026 12:31 AM | |
| 23 | 5c2e235050451ce | March 17, 2026 7:23 PM | |
| 24 | c317e48700c4b69 | March 19, 2026 3:58 PM | |
| 25 | a023d11746be0d3 | March 17, 2026 9:31 PM | |
| 26 | b4679835d5fbef6 | March 18, 2026 12:07 PM | |
| 27 | e21084b38b0b124 | March 18, 2026 6:09 PM | |
| 28 | 6c98c44437d47e6 | March 17, 2026 6:43 PM | |
| 29 | de852c85cfe8c12 | March 18, 2026 10:49 P | Added after election star |
| 30 | 44774d134a26fa7 | March 17, 2026 6:46 PM | |
| 31 | 173d2e8454cd9cc | March 18, 2026 6:03 PM | |
| 32 | 7763afddce4e52c | March 17, 2026 9:11 PM | |
| 33 | db0f63c5af62ae6 | March 17, 2026 7:23 PM | |
| 34 | fe8ad5bc1b39abe | March 17, 2026 8:04 PM | |
| 35 | 0092efcd933f85d | March 17, 2026 6:40 PM | |
| 36 | db888d0cc94a526 | March 18, 2026 7:07 PM | |
| 37 | b7855125875a31d | March 18, 2026 7:48 AM | |
| 38 | 3f591abc5999a7f | March 18, 2026 12:41 PM | |
| 39 | 2e4a5a1396f1125 | March 18, 2026 7:59 PM | |
| 40 | 3506689b81aeda7 | March 17, 2026 6:59 PM | |

1

| | | |
|---|---|---|
| 41 | ab803785ba86510 | March 18, 2026 3:41 PM |
| 42 | 07316eb03cc9afc | March 19, 2026 6:06 PM |
| 43 | 34a59ae2c53e710 | March 17, 2026 6:33 PM |
| 44 | aaeff1aed99b75a | March 17, 2026 7:10 PM |
| 45 | cd492218610c80a | March 19, 2026 9:23 AM |
| 46 | 2c57651e6823d3b | March 17, 2026 9:31 PM |
| 47 | ca8822f6b7f29de | March 18, 2026 10:35 AM |
| 48 | 5c8668f33a626e4 | March 17, 2026 7:44 PM |
| 49 | dcb38bfd0a49850 | March 17, 2026 8:42 PM |
| 50 | c81f6b0eb25f198 | March 17, 2026 8:02 PM |
| 51 | 7dcef8cd37e15a4 | March 17, 2026 7:54 PM |
| 52 | 019437816d9c41a | March 17, 2026 9:35 PM |
| 53 | 642810a76a5b254 | March 17, 2026 7:33 PM |
| 54 | 68d5191be4e4aae | March 18, 2026 10:32 AM |
| 55 | 67701107a728b64 | March 17, 2026 7:44 PM |
| 56 | db62fd565aad045 | March 18, 2026 12:32 PM |
| 57 | 49856df98054ffe | March 18, 2026 6:37 AM |
| 58 | 2c6226868fcc7f7 | March 19, 2026 7:22 PM |
| 59 | 35cb5424fc6a8e4 | March 18, 2026 8:21 PM |
| 60 | efd3878e279c322 | March 19, 2026 9:18 AM |
| 61 | fa4f79ac7a40d8f | March 18, 2026 5:46 PM |
| 62 | d1b040156040aa7 | March 18, 2026 5:03 PM |
| 63 | cec5cf47583daa7 | March 17, 2026 9:11 PM |
| 64 | 9ece68f1c4658ff | March 18, 2026 8:50 PM |
| 65 | 7966bf9df42b34e | March 18, 2026 1:37 PM |
| 66 | 53969830d522e80 | March 17, 2026 8:54 PM |
| 67 | d5c993452fddd51 | March 17, 2026 7:34 PM |
| 68 | 2fca7831b96c461 | March 18, 2026 10:19 AM |
| 69 | 4e42a24ea4d1a0c | March 17, 2026 7:26 PM |
| 70 | a6fecfc557f711c | March 17, 2026 7:35 PM |
| 71 | 585a86141515432 | March 18, 2026 7:40 AM |
| 72 | 2c23a57aef2f5a1 | March 19, 2026 4:21 PM |
| 73 | acbef788b4b9a7e | March 17, 2026 8:55 PM |
| 74 | ce543165c1e4aa8 | March 17, 2026 10:46 PM |
| 75 | de36bd79a3cad92 | March 18, 2026 12:37 PM |
| 76 | 14d252ea286da76 | March 17, 2026 7:18 PM |
| 77 | 89d91098958ffd7 | March 17, 2026 7:14 PM |
| 78 | 364c194fb30cdf2 | March 18, 2026 9:24 PM |
| 79 | 1441ecdf24f15df | March 18, 2026 8:30 PM |
| 80 | c01177ebf02003e | March 17, 2026 8:02 PM |
| 81 | b4ab0c048fa6da4 | March 17, 2026 6:58 PM |
| 82 | 5b22906409601f0 | March 18, 2026 1:30 PM |
| 83 | aa4bd5eaed1337e | March 17, 2026 7:42 PM |
| 84 | bb528a1ff42ea0d | March 19, 2026 12:25 PM |

| | | |
|---|---|---|
| 85 | 2ce540967098e26 | March 19, 2026 7:04 PM |
| 86 | 26f64f7d8bfb547 | March 19, 2026 10:14 AM |
| 87 | e576593f3b8587b | March 18, 2026 7:52 PM |
| 88 | 7e7c685504de688 | March 19, 2026 8:51 AM |
| 89 | 5576ffd1b947af5 | March 17, 2026 11:06 PM |
| 90 | b1bc953316e75dc | March 17, 2026 9:29 PM |
| 91 | 36dda45a1197e45 | March 18, 2026 12:05 PM |
| 92 | 1e7fa8d2bcc343e | March 17, 2026 10:27 PM |
| 93 | 40a693cf87d0f7e | March 18, 2026 1:04 PM |
| 94 | b5a20097a5bf8f3 | March 17, 2026 6:46 PM |
| 95 | 8b790f6a832018b | March 17, 2026 7:01 PM |
| 96 | 0c0cd4121b3e5d2 | March 18, 2026 7:36 AM |
| 97 | 523b3f3564344f5 | March 18, 2026 9:34 AM |
| 98 | 69a10c716f22f91 | March 17, 2026 7:11 PM |
| 99 | ed60b67372e1a1d | March 17, 2026 6:58 PM |
| 100 | 97172e4f7a6ad97 | March 17, 2026 6:39 PM |
| 101 | ad6ff4e171d1ab9 | March 17, 2026 10:12 PM |
| 102 | a3199a8e4cff7ca | March 18, 2026 7:54 PM |
| 103 | 11d3e623032f079 | March 19, 2026 7:47 AM |
| 104 | 816c1bc5ad6423c | March 18, 2026 8:06 PM |
| 105 | f77cbbe6976fb07 | March 18, 2026 11:34 AM |
| 106 | d2e006f4b029ec8 | March 18, 2026 9:23 PM |
| 107 | e9cf4d8024e6b0f | March 18, 2026 7:19 AM |
| 108 | 0666f8b41a9e160 | March 17, 2026 6:52 PM |
| 109 | 58412f003a681a8 | March 18, 2026 9:33 PM |
| 110 | 52abee329e1cb6d | March 17, 2026 6:56 PM |
| 111 | a72736f57a61ce4 | March 17, 2026 8:40 PM |
| 112 | 9a4dbe967f91da2 | March 19, 2026 4:50 PM |
| 113 | 883ec34a2b410c6 | March 17, 2026 6:47 PM |
| 114 | f9116a5f81b2664 | March 17, 2026 9:10 PM |
| 115 | 721c6cbe8ecea05 | March 18, 2026 3:28 PM |
| 116 | 5dfbe8398abb9a5 | March 19, 2026 9:35 AM |
| 117 | cf7b1a2c08ab054 | March 17, 2026 9:18 PM |
| 118 | f59cf6ea5207171 | March 17, 2026 8:09 PM |
| 119 | 7a4360d1da8ccba | March 17, 2026 9:03 PM |
| 120 | 23c50b3a20405d6 | March 19, 2026 9:31 AM |
| 121 | 5d575197907a972 | March 17, 2026 9:15 PM |
| 122 | fbd56deadce0cca | March 17, 2026 9:50 PM |
| 123 | ddaf31ff1642caa | March 17, 2026 7:17 PM |
| 124 | 50580cd4350290b | March 17, 2026 7:57 PM |
| 125 | 05dadc016d6de9c | March 19, 2026 7:51 PM |
| 126 | 8dab12903697e20 | March 19, 2026 7:14 PM |
| 127 | 593c99897272631 | March 19, 2026 9:04 AM |
| 128 | ea864a0759fb7d8 | March 17, 2026 6:44 PM |

3

| | | |
|---|---|---|
| 129 | cd451d6c1f811ef | March 18, 2026 1:39 PM |
| 130 | 551a2459db1e721 | March 18, 2026 6:38 PM |
| 131 | 287fce018c5ab66 | March 17, 2026 7:17 PM |
| 132 | c783165dc72c35c | March 18, 2026 8:49 AM |
| 133 | 02bb7ccdbba3c68 | March 17, 2026 7:13 PM |
| 134 | cfcd17b2a3471a7 | March 17, 2026 9:21 PM |
| 135 | 2d809defd498f03 | March 17, 2026 6:36 PM |
| 136 | 9b189913207850b | March 19, 2026 10:37 AM |
| 137 | 8b5e48db9e02940 | March 18, 2026 8:45 PM |
| 138 | 992f051319ffae7 | March 18, 2026 1:36 PM |
| 139 | ef1a4a0e1203d8b | March 18, 2026 11:09 AM |
| 140 | 552f8f7734c7908 | March 17, 2026 6:34 PM |
| 141 | e95ab8ed7308705 | March 18, 2026 12:47 PM |
| 142 | ca15c5d41192af4 | March 19, 2026 8:24 AM |
| 143 | 92d445334dcebe4 | March 17, 2026 7:08 PM |
| 144 | 86b68caa525eaa3 | March 17, 2026 7:12 PM |
| 145 | 742c6c4ccd13698 | March 17, 2026 10:25 PM |
| 146 | fa87187e604f1cd | March 18, 2026 11:01 AM |
| 147 | 170080d8ac2b201 | March 17, 2026 8:38 PM |
| 148 | 92bdedda799dbea | March 19, 2026 9:33 AM |
| 149 | b8888da2477aaab | March 18, 2026 8:22 PM |
| 150 | f4d7d4100fa4461 | March 17, 2026 8:12 PM |
| 151 | 6f360084f836c8a | March 17, 2026 8:28 PM |
| 152 | 086d01ac4de1f17 | March 18, 2026 9:36 AM |
| 153 | 18216d90988e3ab | March 18, 2026 1:14 PM |
| 154 | b6b4738e7994d9e | March 19, 2026 9:23 AM |
| 155 | bf0834c6352429a | March 17, 2026 9:59 PM |
| 156 | 068f13da86525f0 | March 17, 2026 7:38 PM |
| 157 | 9f54d4b6b19d106 | March 17, 2026 7:47 PM |
| 158 | 9b5d370fe336513 | March 18, 2026 8:45 PM |
| 159 | f7f0cd76566276f | March 18, 2026 7:51 AM |
| 160 | 5a64ab44770fbbf | March 19, 2026 9:26 AM |
| 161 | 6e2c08317ac4fd1 | March 17, 2026 9:55 PM |
| 162 | b43aeab0819e3a2 | March 18, 2026 10:12 AM |
| 163 | 699fac55ee8c807 | March 18, 2026 3:58 PM |
| 164 | 6ca369a5e08c193 | March 17, 2026 8:18 PM |
| 165 | e0d8ff85ad4776a | March 17, 2026 7:33 PM |
| 166 | 98221973a69fc72 | March 18, 2026 10:53 AM |
| 167 | 376f6be1a7bcda7 | March 18, 2026 12:38 PM |
| 168 | 4d3ff94bd893177 | March 17, 2026 8:51 PM |
| 169 | 06cedca6ede84e6 | March 18, 2026 7:27 PM |
| 170 | da40b852727a744 | March 18, 2026 10:29 PM |
| 171 | 6c5b336849636ee | March 18, 2026 12:09 PM |
| 172 | f2b54568df36961 | March 18, 2026 12:25 PM |

4

| | | |
|---|---|---|
| 173 | 6f3c2153cfb9dda | March 17, 2026 7:41 PM |
| 174 | 9c47d217e950d7e | March 18, 2026 11:44 AM |
| 175 | e7a8c568d60d219 | March 18, 2026 9:59 AM |
| 176 | 0c78c1df8e3ca8a | March 18, 2026 12:57 PM |
| 177 | 27f3bebe05d30cc | March 17, 2026 6:55 PM |
| 178 | 997f6c0c4eb0676 | March 17, 2026 7:22 PM |
| 179 | 862f6ea24062d9f | March 17, 2026 6:58 PM |
| 180 | 7f116068e27b901 | March 18, 2026 10:12 AM |
| 181 | c3fbbe0bdb43430 | March 18, 2026 9:41 AM |
| 182 | 39f861fb7c9286f | March 18, 2026 3:06 PM |
| 183 | 5fc3e90c5b5eb02 | March 17, 2026 7:20 PM |
| 184 | 50f9521e79ea05f | March 17, 2026 8:27 PM |
| 185 | b868f9849fb0a48 | March 18, 2026 8:42 PM |
| 186 | 5ea895e73465b40 | March 17, 2026 6:56 PM |
| 187 | 8b90242a69eb76a | March 17, 2026 6:50 PM |
| 188 | ab528f2a5f02bb9 | March 17, 2026 11:22 PM |
| 189 | d42d75e3066f671 | March 19, 2026 12:12 PM |
| 190 | 23e2a20127ad886 | March 18, 2026 8:02 PM |
| 191 | 8599fe5b6ab9fa8 | March 17, 2026 9:23 PM |
| 192 | 2ea1a454dc22c6b | March 17, 2026 6:52 PM |
| 193 | fd4a70a4b2f7690 | March 17, 2026 7:15 PM |
| 194 | 02e4ed6738b91a7 | March 17, 2026 6:54 PM |
| 195 | 146226ba1b12593 | March 19, 2026 6:04 PM |
| 196 | c2debef5b328e95 | March 17, 2026 6:42 PM |
| 197 | 9d370583ef992a5 | March 17, 2026 9:28 PM |
| 198 | 25366fdc8fed0a9 | March 19, 2026 5:30 PM |
| 199 | d45778b6e041160 | March 18, 2026 9:52 AM |
| 200 | c2978652ce97f9a | March 18, 2026 7:49 PM |
| 201 | 3cae21247da12ba | March 18, 2026 2:48 PM |
| 202 | 6a0da224e4c3a18 | March 18, 2026 8:03 AM |
| 203 | 84d2163dad83afc | March 17, 2026 6:33 PM |
| 204 | 57cf74e4f6cdc4e | March 18, 2026 12:03 PM |
| 205 | 0b08d9aaf0ee17f | March 18, 2026 8:54 AM |
| 206 | 0469ba34f8b47ec | March 19, 2026 7:09 PM |
| 207 | 88232c0c39a10e7 | March 19, 2026 9:20 AM |
| 208 | 578f0dbce52306a | March 17, 2026 7:45 PM |
| 209 | 5a9801f2e2327c8 | March 17, 2026 10:23 PM |
| 210 | 01ec4d8a7b7c42c | March 18, 2026 6:10 AM |
| 211 | ac5c387b1992280 | March 19, 2026 9:12 AM |
| 212 | 378d252f8483ab6 | March 19, 2026 10:08 AM |
| 213 | 4590e569c4b94cb | March 18, 2026 6:39 AM |
| 214 | 580dc597e1ddf70 | March 19, 2026 4:33 PM |
| 215 | 95f2781c332c67c | March 18, 2026 10:54 PM |
| 216 | 054bb6772ee5195 | March 17, 2026 7:06 PM |

5

| | | |
|---|---|---|
| 217 | aaaefdce7c98a3f | March 17, 2026 9:53 PM |
| 218 | 87a347e85d1ff45 | March 19, 2026 9:24 AM |
| 219 | efe62e26702faf0 | March 18, 2026 10:26 AM |
| 220 | 1a1fe94717cd73c | March 19, 2026 7:06 PM |
| 221 | b0d5a2829dfd7aa | March 17, 2026 10:12 PM |
| 222 | 7ca9a70d9a726df | March 18, 2026 4:12 PM |
| 223 | 720ba36ae638776 | March 17, 2026 9:31 PM |
| 224 | ad4dab194021ba4 | March 18, 2026 3:00 PM |
| 225 | 7ec7b299bcb76a4 | March 18, 2026 8:42 PM |
| 226 | 5fac9af20ed80ef | March 17, 2026 9:06 PM |
| 227 | ce94fabae587d09 | March 17, 2026 8:33 PM |
| 228 | c8c83abf5e0b376 | March 18, 2026 9:53 PM |
| 229 | 99f85c699072921 | March 19, 2026 10:15 AM |
| 230 | 9ff9adcb2e005f2 | March 17, 2026 7:49 PM |
| 231 | 5316ba267ae130d | March 19, 2026 5:05 PM |
| 232 | b830ba29cbeb5e0 | March 17, 2026 8:32 PM |
| 233 | 2817be191b620d0 | March 17, 2026 7:06 PM |
| 234 | 1caac4031675e87 | March 18, 2026 10:09 AM |
| 235 | e0ffdad41c19a40 | March 18, 2026 12:02 PM |
| 236 | c04e4acb3433560 | March 17, 2026 6:34 PM |
| 237 | 91da2ecbb7e9d32 | March 19, 2026 7:29 PM |
| 238 | 562e5cc7073df17 | March 18, 2026 2:26 PM |
| 239 | 694b1db94af3edd | March 17, 2026 8:30 PM |
| 240 | d5898a661eca2e1 | March 18, 2026 9:29 PM |
| 241 | f4844895807cbdb | March 17, 2026 9:07 PM |
| 242 | 01e2230e89df56e | March 18, 2026 1:44 PM |
| 243 | 4980f109693df1a | March 17, 2026 10:05 PM |
| 244 | f580d0e6af450a0 | March 17, 2026 6:32 PM |
| 245 | 33718e73fe569eb | March 18, 2026 1:14 PM |
| 246 | 4af26437b9a0158 | March 19, 2026 3:49 PM |
| 247 | 74d2bda96aad7d6 | March 17, 2026 6:37 PM |
| 248 | a952e26463a2094 | March 18, 2026 7:54 AM |
| 249 | 5ba08d098a13918 | March 17, 2026 9:46 PM |
| 250 | 9f9441311a6cdd5 | March 17, 2026 6:50 PM |
| 251 | f9d448096cc3196 | March 18, 2026 1:07 PM |
| 252 | f9898ebf08fb473 | March 17, 2026 8:42 PM |
| 253 | 740de31caf98ebc | March 18, 2026 6:50 PM |
| 254 | e9aa7ec528a42c8 | March 17, 2026 7:22 PM |
| 255 | ec641e29b43121b | March 17, 2026 7:23 PM |
| 256 | ed680e84224bd16 | March 18, 2026 1:07 PM |
| 257 | 24be7e8b4a8dc91 | March 19, 2026 9:37 AM |
| 258 | 6bbc8609ca5c042 | March 19, 2026 1:01 PM |
| 259 | 65237ed803c2296 | March 18, 2026 9:07 AM |
| 260 | e55e012cc684734 | March 18, 2026 12:03 PM |

6

| | | | |
|---|---|---|---|
| 261 | 4af0369e50f4b52 | March 18, 2026 7:59 PM | |
| 262 | 046f9c75cd73e17 | March 18, 2026 3:40 PM | |
| 263 | 6955e28aeeac982 | March 18, 2026 7:48 AM | |
| 264 | 8d536d870afb702 | March 18, 2026 4:41 PM | |
| 265 | d6915d1b7992482 | March 17, 2026 7:11 PM | |
| 266 | 1c80760e7de23c1 | March 19, 2026 10:36 AM | |
| 267 | f87714401918c30 | March 17, 2026 6:48 PM | |
| 268 | 62abce3c080a32a | March 18, 2026 7:38 AM | |
| 269 | 68e9815479fe2ab | March 19, 2026 11:59 AM | |
| 270 | 6a762d20b742afb | March 19, 2026 9:10 AM | |
| 271 | e07e3e7dc98a78d | March 17, 2026 8:36 PM | |
| 272 | 6ff54326b0a1830 | March 18, 2026 3:04 PM | |
| 273 | d44c73129ceba00 | March 17, 2026 6:56 PM | |
| 274 | f46f81a45cd4b82 | March 18, 2026 1:46 PM | |
| 275 | 71b6d9d20c09e3f | March 17, 2026 7:21 PM | |
| 276 | 48685e8e613a744 | March 17, 2026 8:43 PM | |
| 277 | 99d6ddbc62ea1f1 | March 18, 2026 4:03 PM | |
| 278 | caf97cf50623667 | March 17, 2026 7:28 PM | |
| 279 | 954cde8d373766c | March 17, 2026 8:44 PM | |
| 280 | cc7d59f00cd3726 | March 19, 2026 12:23 AM | |
| 281 | ebbcfce9475bcfe | March 17, 2026 8:18 PM | |
| 282 | fcbcc0afac682a7 | March 18, 2026 5:31 PM | |
| 283 | 084d05dc7fb5df5 | March 18, 2026 9:05 AM | |
| 284 | 3e35d424fdb7002 | March 17, 2026 7:22 PM | |
| 285 | 60c633a68dde649 | March 17, 2026 6:35 PM | |
| 286 | 155b5f88e242172 | March 17, 2026 10:12 PM | |
| 287 | c9f4215eb85084e | March 17, 2026 6:41 PM | |
| 288 | 3fa5ca807cb248f | March 17, 2026 7:20 PM | |
| 289 | 65099b89fa544d5 | March 17, 2026 9:37 PM | |
| 290 | ea67e7732200bf8 | March 19, 2026 6:12 PM | |
| 291 | 0c6265e5596b4af | March 17, 2026 11:11 PM | |
| 292 | 6e566c714909ac2 | March 17, 2026 7:01 PM | |
| 293 | 7be185bd9bfd1bc | March 17, 2026 8:35 PM | |
| 294 | bdb6aa546f9a407 | March 17, 2026 6:38 PM | |
| 295 | d6a2332cd3fe586 | March 19, 2026 5:22 PM | |
| 296 | 55430ee306fd795 | March 18, 2026 7:26 PM | |
| 297 | 245c75534f7c0ba | March 18, 2026 5:18 PM | |
| 298 | 147d7ed1d601ba8 | March 19, 2026 6:12 PM | |
| 299 | bf210331d3534fc | March 17, 2026 6:38 PM | |
| 300 | 3b5b16240fd0c98 | March 18, 2026 12:41 PM | |
| 301 | 5377c68cf88c82b | March 17, 2026 7:19 PM | |
| 302 | b1c9089b7df857b | March 18, 2026 4:30 PM | |
| 303 | 3a994a4290be5b7 | March 19, 2026 3:27 PM | |
| 304 | 36004cdb5143fd3 | March 19, 2026 7:10 PM | Added after election sta |

7

| | | |
|---|---|---|
| 305 | 3af6fa1e53b448e | March 17, 2026 6:34 PM |
| 306 | 6a95b54f85ea82a | March 17, 2026 10:18 PM |
| 307 | 6ac6ef400f613dd | March 18, 2026 12:10 PM |
| 308 | 0f6fb482a96a5bb | March 19, 2026 10:23 AM |
| 309 | ae964268b3920b8 | March 18, 2026 8:38 AM |
| 310 | 3e39b45835a1891 | March 17, 2026 9:43 PM |
| 311 | 3ef5887be4c1b9f | March 18, 2026 7:04 AM |
| 312 | 588301554397cc7 | March 17, 2026 7:03 PM |
| 313 | 947b0df7e9fc4a0 | March 17, 2026 7:27 PM |
| 314 | 5709585fb592f29 | March 17, 2026 7:11 PM |
| 315 | c5512ddc6a3f554 | March 18, 2026 11:29 AM |
| 316 | ab42bf8a37e7c64 | March 19, 2026 6:27 PM |
| 317 | 6d85fd8da4d88a4 | March 17, 2026 8:09 PM |
| 318 | 25d0b87b75d64db | March 17, 2026 6:35 PM |
| 319 | f712e9c2d209207 | March 17, 2026 8:37 PM |
| 320 | f2d2e5d56a1903b | March 18, 2026 12:23 AM |
| 321 | 2b0bf3fbfd174f4 | March 17, 2026 10:21 PM |
| 322 | 672b2e17b0fb61f | March 17, 2026 9:35 PM |
| 323 | 39507a8756ebe2c | March 18, 2026 8:36 AM |
| 324 | 366eb2c6cea8e7b | March 17, 2026 8:16 PM |
| 325 | 896cdb68e9e0d97 | March 18, 2026 5:23 PM |
| 326 | 729e61d75c0f868 | March 17, 2026 9:51 PM |
| 327 | 17d0ca522507a58 | March 17, 2026 7:58 PM |
| 328 | aa077ebdef43060 | March 17, 2026 6:48 PM |
| 329 | e2372e04866bce2 | March 17, 2026 9:04 PM |
| 330 | 819f0deb33fd95c | March 18, 2026 12:18 PM |
| 331 | a1d59c91d974e03 | March 17, 2026 7:00 PM |
| 332 | 371c78efccaa5c8 | March 17, 2026 7:00 PM |
| 333 | e554e5ceec41695 | March 18, 2026 12:27 AM |
| 334 | a91bd9969ca19a1 | March 18, 2026 8:03 PM |
| 335 | 3150d366450eb73 | March 17, 2026 6:56 PM |
| 336 | 108d66905b3abde | March 18, 2026 10:27 PM |
| 337 | 189c645a4d17d3f | March 17, 2026 7:00 PM |
| 338 | 1a5ac8a317cfd0f | March 17, 2026 6:35 PM |
| 339 | 354ca25ea6ddd64 | March 18, 2026 9:30 AM |
| 340 | d131fb103443fc1 | March 18, 2026 8:19 PM |
| 341 | bd52e3cee511479 | March 17, 2026 7:06 PM |
| 342 | c8b16755accc59c | March 17, 2026 6:53 PM |
| 343 | fead49e39bcf9bb | March 17, 2026 11:08 PM |
| 344 | 56cdafdb5628f6b | March 17, 2026 7:19 PM |
| 345 | a448adb5fc74e2f | March 17, 2026 8:48 PM |
| 346 | 2c36182227aeadd | March 18, 2026 2:50 PM |
| 347 | 5d29855d4650a1c | March 19, 2026 7:35 PM |
| 348 | 953b7f70bb79e54 | March 18, 2026 5:21 PM |

8

| 349 | e7416aac34953dc | March 18, 2026 9:24 PM |
|---|---|---|
| 350 | b714676ae2e6dde | March 17, 2026 11:24 PM |
| 351 | 5fc094bed2b11a4 | March 18, 2026 3:52 PM |
| 352 | b9142530ff2e0a0 | March 17, 2026 7:14 PM |
| 353 | 77c2454efca71e5 | March 18, 2026 2:28 PM |
| 354 | 87fa89cf524de0d | March 17, 2026 10:06 PM |
| 355 | e95143bf2324f97 | March 18, 2026 5:29 PM |
| 356 | d85a53f7b989211 | March 17, 2026 6:38 PM |
| 357 | 0f3d77b5e3fc961 | March 17, 2026 6:52 PM |
| 358 | 19716eafd9b2c31 | March 17, 2026 8:08 PM |
| 359 | 5ded04eb6dd1da4 | March 17, 2026 9:02 PM |
| 360 | 7b03e1a485a152b | March 18, 2026 6:22 PM |
| 361 | 52287f6cb8de59c | March 17, 2026 7:08 PM |
| 362 | dd05ea16a7cde70 | March 17, 2026 6:59 PM |
| 363 | ea2783c5f295ddb | March 17, 2026 7:20 PM |
| 364 | 3330afbe71b26e9 | March 17, 2026 8:55 PM |
| 365 | 9d30ced53e004a4 | March 17, 2026 7:37 PM |
| 366 | 95ad858b0138470 | March 17, 2026 8:48 PM |
| 367 | 75c991c19acccf9 | March 19, 2026 12:18 AM |
| 368 | faf8f7b9ad67db1 | March 19, 2026 5:45 PM |
| 369 | 63705bfe8549f7e | March 18, 2026 12:10 PM |
| 370 | b6752bf30184c5e | March 18, 2026 2:16 PM |
| 371 | 5aeca3ac583889b | March 17, 2026 6:51 PM |
| 372 | 77a33b2e57fcc87 | March 18, 2026 2:36 PM |
| 373 | 812901bb2e2816a | March 17, 2026 7:07 PM |
| 374 | 1a7df333713efcf | March 19, 2026 7:04 PM |
| 375 | ae62d0d0f4c05e4 | March 17, 2026 9:58 PM |
| 376 | 2fde92a53b5c940 | March 18, 2026 11:40 AM |
| 377 | 82d1c8bb835aabb | March 17, 2026 6:41 PM |
| 378 | ab02f0056f5b4cc | March 19, 2026 7:39 PM |
| 379 | 966ef06a5a65b12 | March 18, 2026 6:21 AM |
| 380 | 135ae67bf4f910b | March 17, 2026 8:51 PM |
| 381 | 26717ca6cf37578 | March 18, 2026 12:18 PM |
| 382 | 39193815da77478 | March 17, 2026 7:25 PM |
| 383 | 85cf27bb1d0cb49 | March 19, 2026 10:40 AM |
| 384 | 24d5064fe09e4cf | March 18, 2026 8:09 PM |
| 385 | b1e291c55f8096c | March 19, 2026 9:14 AM |
| 386 | e69955cede1c94e | March 17, 2026 7:49 PM |
| 387 | 843d9b4328b28de | March 17, 2026 7:25 PM |
| 388 | e40ee5499c5d933 | March 17, 2026 9:26 PM |
| 389 | 24e729c2dfcaa06 | March 17, 2026 6:53 PM |
| 390 | 66eff2af23147b7 | March 17, 2026 9:05 PM |
| 391 | e4fdbc03ce0f77b | March 18, 2026 11:42 AM |
| 392 | c6f734ee057091c | March 17, 2026 6:54 PM |

9

| | | |
|---|---|---|
| 393 | eae5ddbc9704e20 | March 17, 2026 7:01 PM |
| 394 | cc8fcc0da0acc43 | March 17, 2026 7:18 PM |
| 395 | 926bc3bd2bd7df7 | March 17, 2026 7:15 PM |
| 396 | 42f6d7262fad769 | March 18, 2026 7:35 AM |
| 397 | f0b4413cb2fde86 | March 19, 2026 7:28 AM |
| 398 | cde016b4ea7fa9c | March 19, 2026 6:53 PM |
| 399 | 9a12a8d68639a1a | March 18, 2026 12:21 AM |
| 400 | cfd3e1d6484e2de | March 17, 2026 9:41 PM |
| 401 | 1a4ab1cfd8cc7f8 | March 17, 2026 9:10 PM |
| 402 | 465702c4be9ee8c | March 17, 2026 6:34 PM |
| 403 | 18129f298152344 | March 17, 2026 7:01 PM |
| 404 | 1e6e51bde0d4336 | March 17, 2026 6:41 PM |
| 405 | 2e452f0732294ca | March 18, 2026 8:52 AM |
| 406 | 180ed6350f3e680 | March 17, 2026 6:35 PM |
| 407 | 2351f0163e7bad5 | March 17, 2026 8:00 PM |
| 408 | 12bceed9a319205 | March 19, 2026 11:08 AM |
| 409 | 73c608a3076faf4 | March 17, 2026 7:35 PM |
| 410 | e993c78b934d7b0 | March 18, 2026 1:00 PM |
| 411 | d26342c0de55c66 | March 17, 2026 7:05 PM |
| 412 | 4a084182472e67d | March 17, 2026 7:08 PM |
| 413 | a3628a8cf02eefc | March 19, 2026 1:45 PM |
| 414 | 115a5071a65eb01 | March 17, 2026 7:28 PM |
| 415 | c06ef89ea18cd68 | March 18, 2026 12:09 PM |
| 416 | 07e4c36ce15302e | March 18, 2026 12:19 PM |
| 417 | bbfd75915ecc92b | March 18, 2026 12:44 PM |
| 418 | c39f77d3d4a9ac8 | March 19, 2026 10:23 AM |
| 419 | df3749df43b3334 | March 19, 2026 4:12 PM |
| 420 | 65a1336567d2107 | March 19, 2026 9:49 AM |
| 421 | 25baeffbc218d91 | March 17, 2026 7:04 PM |
| 422 | 55168bd82867ac5 | March 19, 2026 6:36 PM |
| 423 | bd9c8e21759d033 | March 18, 2026 12:46 PM |
| 424 | d1d0c5d6333039d | March 17, 2026 6:34 PM |
| 425 | 433e6e47498dd23 | March 18, 2026 1:54 PM |
| 426 | d8275039668f75c | March 17, 2026 6:44 PM |
| 427 | bf50a93cf85d2e2 | March 18, 2026 12:02 PM |
| 428 | ecf428def57e101 | March 17, 2026 8:43 PM |
| 429 | 3daeae5d55698ba | March 18, 2026 10:00 PM |
| 430 | 2ee0848ae52f552 | March 18, 2026 9:37 AM |
| 431 | 4253a31ae735520 | March 17, 2026 6:56 PM |
| 432 | c44a7aaeeedf5a3 | March 17, 2026 7:22 PM |
| 433 | 75005d4e51d7b58 | March 18, 2026 11:31 AM |
| 434 | 548a074efde3d36 | March 19, 2026 3:32 PM |
| 435 | 6ef6a894c7e6b89 | March 17, 2026 6:39 PM |
| 436 | 614072738c19704 | March 19, 2026 11:19 AM |

| | | |
|---|---|---|
| 437 | 1c7a76b794c18f6 | March 18, 2026 4:44 PM |
| 438 | 43df97544817be1 | March 17, 2026 7:34 PM |
| 439 | 2e6b288e9589bc6 | March 17, 2026 8:13 PM |
| 440 | a8366b5a2c41696 | March 17, 2026 10:01 PM |
| 441 | 911600fc775146f | March 17, 2026 8:11 PM |
| 442 | 93b446503f8b1a5 | March 17, 2026 9:11 PM |
| 443 | 57b3406b2d7762e | March 19, 2026 9:02 AM |
| 444 | ea53598d1c0dc8b | March 17, 2026 7:01 PM |
| 445 | a8a35c2492f3bca | March 17, 2026 9:44 PM |
| 446 | 00b3c579043039c | March 17, 2026 6:45 PM |
| 447 | 1661284182d9a7a | March 19, 2026 11:17 AM |
| 448 | 3d8f1f87acb5da4 | March 18, 2026 9:41 PM |
| 449 | dd4664452ea3080 | March 17, 2026 10:53 PM |
| 450 | 3937fb240b580bb | March 17, 2026 7:04 PM |
| 451 | 3ab1e40be751dc2 | March 18, 2026 2:49 PM |
| 452 | a97a8e63795a71b | March 17, 2026 7:44 PM |
| 453 | fcd8c820bda2e3f | March 17, 2026 10:47 PM |
| 454 | dcd05fb35e5664c | March 17, 2026 8:16 PM |
| 455 | 10e4edb24916cc4 | March 18, 2026 8:09 PM |
| 456 | 8e180f753743dd4 | March 17, 2026 10:02 PM |
| 457 | 35a681e52ec514a | March 19, 2026 2:44 PM |
| 458 | c3bff28ba9c6a51 | March 19, 2026 7:48 PM |
| 459 | 251215e16691b8d | March 17, 2026 8:04 PM |
| 460 | d236dc2b971125e | March 18, 2026 12:16 PM |
| 461 | c84f82f4c0f1817 | March 18, 2026 4:17 PM |
| 462 | 075d210ecb2845e | March 18, 2026 12:13 PM |
| 463 | c4aa22379dc45a1 | March 18, 2026 12:33 AM |
| 464 | 391248bb1e12e0d | March 17, 2026 10:06 PM |
| 465 | 4cf477544653339 | March 17, 2026 7:26 PM |
| 466 | f69cc30c5079304 | March 19, 2026 7:17 PM |
| 467 | 327ff17568721b4 | March 17, 2026 10:35 PM |
| 468 | 8372a13ca7512e8 | March 18, 2026 12:48 PM |
| 469 | 581c83b6c6bf868 | March 17, 2026 6:58 PM |
| 470 | 9fffc60890d6eaf | March 18, 2026 10:21 PM |
| 471 | 840dbe26df26e3a | March 17, 2026 6:40 PM |
| 472 | 61932ce1cf92b4b | March 18, 2026 12:04 PM |
| 473 | c2fce4ffe11c14c | March 18, 2026 12:03 PM |
| 474 | 0371fb57757e4ab | March 18, 2026 7:29 PM |
| 475 | 5839daa5ebd82b1 | March 17, 2026 7:52 PM |
| 476 | 3b4d19e3971ff37 | March 18, 2026 5:49 PM |
| 477 | 5ed0fdbd38409bc | March 19, 2026 6:44 PM |
| 478 | a64cadf230f9deb | March 18, 2026 12:38 PM |
| 479 | a5f2c2830c75f6f | March 19, 2026 7:07 PM |
| 480 | ef1ca017939e47f | March 18, 2026 2:12 PM |

| | | |
|---|---|---|
| 481 | 1d6e2941d944fe5 | March 19, 2026 9:52 AM |
| 482 | 05555100db72bcb | March 18, 2026 12:22 AM |
| 483 | e30cf236b7e8fc0 | March 17, 2026 6:37 PM |
| 484 | ee0325221b039da | March 19, 2026 4:47 PM |
| 485 | 6933d9c7fd8cc44 | March 18, 2026 3:30 PM |
| 486 | 3d4cec9b8697b8d | March 17, 2026 8:29 PM |
| 487 | 3fa70f6c2101834 | March 19, 2026 11:35 AM |
| 488 | 68569256d979a9e | March 18, 2026 7:28 PM |